# A. G. Meriwether *vs* Lewis, &c.; and Lewis *vs* D. Meriwether, &c.

### ERROR TO THE LOUISVILLE CHANCERY COURT.

*Vendor and Vendee. Release. Surplus Land*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

IN July, 1837, A. G. Meriwether sold and conveyed to Murphey, two tracts of land in Jefferson county, one described as containing 180 acres, more or less, and lying on the Ohio, and the other near it, but not on the river, described as containing 50 acres, more or less. An express lien is reserved in the conveyance, to secure the deferred instalments of the purchase money, which are set out. The deed shows that the land was sold at $35 per acre, and contains a provision, that if there should be more or less than the quantity named, the price should be made up or diminished at that rate. In

1839, two thousand dollars of the price having been previously paid, Murphey resorted to a sale of the land as the means of paying the residue, and employed Spurrier as his agent for that purpose. Upon advertisement being made of the land, John Lewis, residing in Franklin county, being desirous of purchasing a tract of land for Mitchell, his son-in-law, applied to Spurrier, and with him went to see Murphey's land, which was shown by D. Meriwether, the brother and agent of A. G. Meriwether, and who lived on the adjoining tract. D. Meriwether seems to have been desirous that Lewis should make the purchase, and upon the objection of the latter, that there was more land than he wanted, agreed that he would take a portion of it. A line was accordingly designated by him as dividing the larger tract into two portions, one containing 70 acres, which he would take, and the other 110 acres, which with the smaller tract of 50 acres, Lewis was to take. With this understanding as to the division line, and the quantity on each side, the agreement for the sale was closed, without actual survey of the land. And on the 17th of August, 1839, Murphey executed deeds to Lewis and Meriwether respectively, for the different portions, as designated by their agreement. Each of these deeds make the line which had been agreed on, one of the boundaries of the tract conveyed, and states the quantity as it had been represented by D. Meriwether. The several instalments of the purchase money are stated in each of the deeds; but no lien is reserved. And at the bottom, or below each deed, is a memorandum, signed by the grantor and grantee, to the effect, that if there should be more land than stated in the deed, it should be paid for at the rate of $35 per acre, and if less, at the same rate. The greater part of the money and notes given by Lewis for his part of the land, were, in pursuance of the understanding of the parties, handed over to D. Meriwether, in payment of A. G. Meriwether's demand against Murphey, due also for the land. And a release to Murphey of even date with these deeds, was executed by D. Meriwether, as attorney in fact for A. G. Meriwether. The grantees of Murphey

obtained possession of their respective tracts of land, before or during the winter of 1839–40. But in the course of the year 1845, Mitchell having become dissatisfied with his residence, Lewis, who still resided in Franklin, offered his part of the land for sale through Spurrier, the same agent who had been formerly employed. There was some negotiation for a sale to A. G. Meriwether, through D. Meriwether, as his agent, in which it appears that the price of $25 per acre, was undertood on both sides, as the basis of the proposed contract, and the sum of $4,000 produced by 160 acres at $25 per acre, was assumed as the entire price demanded. But there was a difference as to the time of payment, or as to there being interest on the deferred payments. And the negotiation having failed, either on this ground, or from the determination of A. G. Meriwether not to purchase, D. Meriwether, in a few days afterwards, offered to purchase for himself, at the price of $4,000, with three per cent. interest on the deferred payments. This proposition was made, and accepted by letter, early in January, 1846. On the 13th of that month, Lewis and wife executed a deed in Franklin county, conveying the land to D. Meriwether for $4,000, payable in instalments stated, and describing one of the tracts as containing 110 acres, be the same more or less, and the other as containing 50 acres, more or less. This deed appears to have been presented for record in the Clerk's Office of the Jefferson County Court, on the 19h of January, 1846. And on the 24th of the same month, D. Meriwether wrote to Lewis, suggesting the discovery of a mistake in the deed in describing one of the lines of the 50 acre survey, which as it existed also in the record of Murphey's deed to Lewis, might occasion a loss to him of some fifteen acres, and he requests Lewis to see if the original deed also contained the mistake, and to inform him of that, and also "whether it was your, (Lewis's) understanding of our bargain, that if there was a deficit, (as there certainly is,) in any one of the tracts, you are to make it good, or whether I am to look to Murphey to correct this or any other mistake or deficiency. Such was certainly my understand-

ing, &c. My own, as well as the understanding of the contract by Mr. Spurrier, is to this effect, that if there was a deficit in either or both of the tracts, I was not to look to you for indemnification, but that I was to have such recourse upon those of whom you purchased, as you would have had, had you retained the land, and if there was a surplus, I was to pay nothing for it, or in other words, I purchased without any guaranty, of any thing but title." In answer to this letter, under date of Jauary 28th, 1846, Lewis, after indicating that the mistake might be corrected or be rendered harmless by comparison of the various deeds, and professing his own willingness to make any proper correction, says: "Having bought without survey, I sold in the same way, to avoid reclamation, the indefinite quantity for which I had paid," &c. "It will be manifest, from my deed to you, that I did not intend to be responsible for deficit, should there be any." "You say that you and Mr. Spurrier understood 'I' (you) purchased without any guaranty of quantity, or any thing but title." "So I understood you to have purchased what I paid Murphey for."

On the 4th day of March, 1846, D. Meriwether filed his bill against Murphey and Lewis, in which, after setting forth the sales and conveyances from Murphey to Lewis and himself, and the payment of the purchase money by each, at the rate of $35 per acre, for the quantity named in the respective deeds, and stating the sale and conveyance from Lewis to himself, he alleges that since that conveyance he has discovered that the tract conveyed to him by Murphey as containing 70 acres, contained only 50 acres, and that there was an excess of 20 acres in the tracts conveyed to Lewis; that consequently, under the stipulations of the parties to the two first deeds, Murphey is indebted to him in the sum of $700 with interest, for the deficiency in his tract, and Lewis is indebted to Murphey in a like sum, for the excess in the other part of the land; and on the ground of Murphey's being a non-resident, he prays that Lewis may be decreed to pay his demand against Murphey. In the progress of the suit it was ascertained that

the deficiency in the tract conveyed by Murphey to D. Meriwether, was only about seven acres and a half, and that in the other part of the land which had been conveyed to Lewis, and by him conveyed to D. Meriwether, there was an excess of about 37½ acres beyond the quantity of 160 acres, stated in the deeds, so that there was in the two tracts conveyed by A. G. Meriwether to Murphey, as containing 230 acres, and since concentrated in D. Meriwether, under deeds for the same quantity, an excess of thirty acres. And a bill was filed in the name of A. G. Meriwether, claiming against Murphey, and on the ground of his non-residency, against Lewis, payment for this excess of 30 acres, at the rate of $35 per acre, with interest, by virtue of the stipulations in their respective deeds.

Lewis resisted each of these claims on various grounds growing out of the relations between himself and D. Meriwether, and the alleged acts and representations of the latter in the several transactions referred to, and which, in both suits, are made the subject of cross-pleadings between these two parties. He pleads also in bar of A. G. Meriwether's claim of payment for the surplus, the release to Murphey, before mentioned, as having been executed by D. Meriwether, as attorney for A. G. Meriwether, when the conveyance from Murphey was made.

By agreement of parties, the two suits were consolidated and heard together, and the testimony in each made evidence in both. On the hearing the Chancellor construing the release above mentioned as extending not merely to the consideration mentioned in the deed to Murphey, and the express lien therefor, but also to the claim for surplus, dismissed the bill of A. G. Meriwether on that ground, but decreed to D. Meriwether, on his bill, the value of the deficiency in the tract conveyed to him by Murphey, at $35 per acre, with interest, to be paid by Lewis under his agreement to pay Murphey at that rate for surplus. The unsuccessful party in each case, has appealed from the decree against him, and the two causes have been heard together in this Court.

MERIWETHER
vs
LEWIS, &c.

M. sold to D. M.
a tract of land,
retaining a lien
for the purchase
money.   D. M.
sold to L., who
required that M.
should   release
the lien.   D. M.
paid for the land
at the price stip-
ulated and quan-
tity supposed.—
M.     thereupon
gave the release.
In the deed from
M. to D. M. there
was a covenant,
that if the land
fell   short   in
quantity, M. was
to deduct from
the price at $35
per  acre;  if  it
exceeded     the
supposed quan-
tity,  D.  M.  to
pay at the like
rate.   It   was
found, upon sur-
vey,  that there
was a surplus in
the tract—Held
that the release
did not embrace
the claim of M.
against D. M. for
compensation for
the excess, be-
ing without con-
sideration,   and
not intended by
the parties,  to
embrace it.

We shall first consider whether the release to Mur-
phey was properly construed to embrace the claim now
set up by A. G. Meriwether.  This instrument reciting
the sale and conveyance to Murphey, of two tracts, one
containing 180 acres, the other 50 acres, and that a sum
had been retained for payment of the notes named in
the deed, and that Murphey had discharged and paid off
said notes, and they had been delivered to him, proceeds
upon the alleged consideration of one dollar, to "release
and forever discharge said two tracts of land and
Daniel Murphey from all liens or claims of any kind and
nature whatever, in as full and ample a manner as if
there had been no lien retained on said tracts of land."
It is true that the general terms of release are suffi-
ciently comprehensive to embrace not only the claim
and lien for the price of the land according to the quan-
tity stated in the deed, and for which a lien was retain-
ed, but all other claims and liens against the land and
against Murphey, whether growing out of the contract
for the land, or arising from any other transaction·
But these general terms are restrained not only by the
recital, which shows the particular object which the
parties had in view, but also by the concluding words,
"in as full and ample a manner as if there had been no
lien retained on said tracts of land."  These words are
obviously introduced for the very purpose of qualifying
the release and showing its extent.  They compose a
part of the release itself, and by their reference to the
lien retained the determining its extent of the release,
which lien is evidently the same mentioned in the reci-
tal, they are sufficient in connection with the recital, to
show that the release was intended to be confined to
the lien expressly recited, and to the claim secured
thereby, and which was acknowledged to have been
paid off and satisfied.

It is to be observed too, that there was not only no
actual consideration for a release more extensive than
is here supposed, but that assuming, as upon the plead-
ings and evidence we are authorized to do, that the re-
lease was made, not at the instigation of Murphey, but
at the suggestion and for the benefit of Lewis, who was

paying Murphey's debt, and purchasing the land on which the lien had been retained, there would seem to be no motive on his part for requiring more than record evidence of the extinguishment of the lien reserved for the debt which had been paid. For not only was there no real apprehension of an excess in the entire quantity, but if there had been, the release from A. G. Meriwether to Murphey, however availing to protect the latter, would have furnished no protection to Lewis against his direct stipulation to pay Murphey for any surplus in the tract conveyed to him, and it is sufficiently certain that he feared no liability on account of any surplus which might be found in the tract conveyed to D. Meriwether. It does not appear that Murphey, who was aliening the land and was about leaving the State, had any apprehensions that he would be followed up by any claim of A. G. Meriwether, connected with the land. He did not require the release which was executed, and does not appear to have known any thing about it. He could not, with any reason, have required a release of the claim against him for surplus, while he was taking a stipulation which would secure payment for surplus to himself. Nor was there any reason why Lewis, who was entering into such a stipulation with Murphey, should require the gratuitous release by A. G. Meriwether, of all claim upon Murphey. Lewis wanted the release to save him from "after claps." To the extent of the payments made and the lien which had been retained, it operated as a benefit to him, by furnishing certain and permanent evidence of the extinguishment of that lien. But as a release to Murphey, it did not affect his own liability for surplus, and conferred no benefit upon him.

We are of opinion, therefore, upon the face of the release and upon the extrinsic considerations applicable to it, that it does not embrace the claim for surplus, and constitutes no bar to the relief sought by A. G. Meriwether. The next enquiry then is, as to the extent and nature of the relief to which he is entitled. His deed to Murphey contains the following clause, on which his claim is founded, viz: "And it is hereby agreed that the

Where a vendor conveyed a supposed number of acres, and at the foot of the conveyance the parties stipulated to pay for deficiency or excess at a stipulated price per acre, it was not the duty of one more than

MERIWETHER
vs
LEWIS, &c.

the other to as-
certain the true
number of acres,
and no interest
would follow un-
til the excess or
deficit was as-
certained.

above lands have been sold at the rates of thirty five dollars per acre, and if there should be more or less than the estimated quantity, the price is to be made up or diminished, as it may, on measurement, hold out more or less." The clause at the foot of the deed from Mur-phey to Lewis and D. Meriwether, intended mainly, no doubt, to meet Murphey's responsibility under the fore-going agreement, is in these words: "It is understood by the parties, that if the land does not hold out (in Lewis's case,) 160 acres, the said Lewis is to pay at the rate of $35 per acre, and if more, at the same rate." These clauses establish an absolute responsibility to pay at the rate of $35 per acre for any surplus which may be ascertained, whether small or great. But they do not impose an obligation to pay until the surplus is as-certained, nor to pay more than at the rate of $35 per acre for it when ascertained; nor do they make it the peculiar duty of the vendees to ascertain the true quan-tity by measurement. It may be said that the peculiar phraseology of these covenants indicates that the par-ties intended or expected that the stipulated price of surplus or deficit, should be added to or subtracted from the purchase money mentioned in the deeds, and should thus be incorporated with the original contract as a part of the original price of the land. But if this in-tention may be inferred, it is equally clear that it must have been based upon the further intention or expecta-tion that the true quantity would be ascertained in a short time, and at any rate, during the pendency of the payments to be made under the original contract. But it by no means follows, that if the ascertainment of quantity be postponed beyond that period, either party, upon discovering a surplus or deficiency, after any in-definite lapse of time, is entitled to be placed on the same footing as if the fact had been ascertained prompt-ly, as contemplated in the covenant.

There is nothing in either of the covenants equiva-lent to a stipulation that surplus or deficiency, when-ever ascertained, is to be paid for at the rate of $35 an acre, with interest from the date of the original sale or of the payments therein provided for; and nothing

equivalent to a stipulation that whenever the true quantity is ascertained, the parties are to be placed in the same condition as if it had been known when the sale was negotiated. But as either party might at once or at any future time, ascertain the true quantity by measurement, and as the provision made for surplus or deficiency, imposes no duty upon either party until the true quantity is ascertained, at which time only the surplus or deficiency is to be paid or accounted for at $35 per acre, we think this provisional contract made for that contingency, and dependent wholly upon it, should be construed as if it were made after the happening of the contingency, and as if it was then agreed that the ascertained surplus or deficiency should be paid or accounted for at the rate of $35 per acre. If such a contract were made while the original contract was pending and not consummated by payment, the new contract might be considered as incorporated with the old one, and as affecting a modification of its terms. If it was not made until years afterwards, it would stand as an independent contract for payment for surplus or deficiency at $35 per acre; and so we think the stipulations now in question should be construed.

If under this construction, either party should lose any reasonable advantage or profit, such a result would be attributable entirely to his own *laches*, in not ascertaining the surplus or deficiency in a reasonable time, or immediately. But to construe these covenants as under all circumstances incorporating the stipulated price of surplus or deficiency with the original consideration, so as to make it bear interest as the original instruments might do, would give to the party entitled to compensation, the entire, and an unreasonable advantage from his own delay, and would in most cases be productive of manifest hardship and injustice to the other party. It is true, if the deeds had contained no such stipulation, the vendor, who has sold at a definite price per acre, might upon discovery, within reasonable time, of an unusual surplus, be entitled to a re-conveyance of the surplus itself, unless the vendee would pay for it on equitable terms, which imply in general, a payment at

Generally where there is an excess or a deficit in the quantity of land intended to be conveyed, neither interest or rent should be paid by the one or the other party.

MERIWETHER
vs
LEWIS, &c.
the same rate per acre as fixed in the original sale. But the vendor, though entitled to the surplus or its value, could not compel the vendee to take it even at the original contract price, and much less at that price, increased either by annual interest or by annual rents, from the date of the original sale or payments. The land might have depreciated in value from general causes, and even if it had appreciated, neither the interest upon its original value, nor the value of the annual use of the land itself, furnishes any criterion for measuring the appreciation for one year or for a series of years. And we find no case in which this has been adopted as the criterion of compensation, unless indicated as equitable by the circumstances of the case, and it is no where, so far as we have seen, laid down as the general rule of compensation. In the case of *Rogers* vs *Garnett*, (4 *Monroe*, 271,) the Court says, in reference to a vendor by the acre, discovering a surplus after he has conveyed the land, that if he should apply "in due time after the discovery, and in reasonable time after the error committed, he would be entitled to redress in a Court of equity. But whether by a re-conveyance of the surplus, or by compensation at the contract price, or at the present value, would depend upon circumstances." It is clear that the principle thus laid down, excludes from consideration, both interest upon the contract price, and rent for the use of the land, unless the circumstances of the case should make one or the other an equitable ground of charge, and even then it would seem that this equity should operate only upon the question whether the vendor should have the land itself, or its contract price or its present value.

Although the right to claim for surplus or deficiency be apparent on the deed, and even secured by express stipulation, the delay in ascertaining the fact on which it depends, gives to it the character of a dormant claim, and to decide that such a stipulation until discharged by time or presumption of satisfaction, entitles a party absolutely and under all circumstances, to the contract price of the surplus or deficiency, with interest or rent from the original sale, would be securing to a claim es-

sentially dormant, and to the injury of those who may
have been deceived or lulled by the continued failure to
ascertain and assert it, a fixed increment exceeding the
permanent profits of ordinary business or capital in the
same hands, and which might make it when finally
brought to light for enforcement, swallow up the entire
subject to which it applies. . Such a construction ought
not to be adopted, unless clearly indicated by the terms
of the agreement. And we think this is not the case
in either of the agreements or stipulations now in ques-
tion.

The whole effect of each of the stipulations is, there-
fore, in our opinion, to fix the rights of the parties in
these particulars :. First, That the vendee is to keep the
surplus, if any, and to pay for it, whether large or
small, at the contract price; and second, that if there
be a deficiency he shall be compensated therefor at the
same price. The question of interest or rent is not
provided for, and it was expected that the early ascer-
tainment of the true quantity would prevent it from
arising or becoming of any importance. If delay had
been anticipated, it is possible there might have been
some provision on the subject. But even then, the
stipulation might still have been what it substantially is,
that upon the ascertainment of a surplus or deficit, it
shall be paid for at $35 per acre.

If Lewis or Murphey had been merely a purchaser by
the acre, without express stipulation to keep the surplus
at a fixed price, it might have been at his option to sur-
render the surplus when ascertained, and as the land
had then depreciated nearly one third in value, he
might, if he elected to surrender it, have been equitably
bound to make some compensation for its use in the
mean time. But being bound to keep the land at a fixed
price, that price must be regarded as including all com-
pensation for rent, interest and risk of deficiency, all of
which might have been at once determined by the as-
certainment of quantity which A. G. Meriwether had a
right to make, and the voluntary postponement of
which did not increase his claim.

Meriwether
vs
Lewis, &c..

L. purchased of
M. who had pur-
chased of A. G.
M.; each was to
keep any sur-
plus and pay for
it at a stipulated
price, or receive
compensation for
any deficit at like
price. L. con-
veyed to D. M. in
the same way.
M. being a non-
resident, A. G.
M. sued L. and
M. to compel L.
to pay for the
surplus which
M., the non-
resident, owed
for—Held that

MERIWETHER
vs
LEWIS, &c.

L. could not be
made resposible
beyond his lia-
bility to M. from
whom he had
purchased.

If in determining the construction or operation of these stipulations, there be any room for equitable con- siderations arising from the particular case, Lewis is en- titled to have his liability to A. G. Meriwether restrict- ed by the narrowest construction of which either instru- ment admits. He cannot be compelled to pay more than he owes to Murphey, nor more than Murphey owes to A. G. Meriwether. Then he purchased two years after the conveyance to Murphey, unsuspicious of any surplus in that deed, intending and desiring to buy only about 160 acres, having, so far as appears, no use for more, and believing that he was purchasing about that quantity, from the confident assertion of the fact by D. Meriwether, then the agent of A. G. Meriwether, forwarding the purchase as a means of facilitating the collection of the purchase money payable to his princi- pal, and who, so far as quantity and boundary were concerned, negotiated the sale with him, and in effect dictated its terms. He had a right to confide in this as- sertion as to quantity, not only because D. Meriwether had been raised upon the land in question, and resided near it, and was, as he truly averred, acquainted with every part of it; but also because he at the same time took the adjacent residuum of the land conveyed to Murphey at the same price, and as containing the num- ber of acres remaining after deducting from the tract, as estimated in the deed to Murphey, the number of acres which he affirmed to be contained in the part assigned to Lewis in his purchase. Had the excess been then known, he might, and probably would have re- jected it. Or, if ascertained soon afterwards, he might have saved himself from loss. But it was not until there had been a still further acquiescence by all parties for six or eight years more in the estimation of quanti- ty as stated in the deeds, and after the land had depre- ciated nearly one third in value, and after Lewis, con- firmed by such acquiescence, in the belfef that there was no material excess or deficiency, had sold·his part to the same agent, D. Meriwether, at a great sacrifice in price, as containing 160 acres, more or less, that in the effort of D. Meriwether to make profit by this dif-

ference in the terms of the deeds to and from Lewis, the discovery is made that there was an excess of 30 acres in the two tracts conveyed to Murphey, and even a greater excess in the land conveyed by him to Lewis, and a claim set up for the excess. If these circumstances could not protect Lewis against the claim of interest or rent, if expressly sanctioned by his covenant, they at least repel any such claim as resting on the mere equity of the case. And as we are of opinion that the terms of the agreement under consideration, do not necessarily import an obligation to pay interest or rent for any period anterior to the ascertainment of the true quantity and a demand for the surplus, we are satisfied that A. G. Meriwether can claim for the surplus in his deed to Murphey, no more than $35 per acre, with interest from the filing of his bill.

For this claim, being the price of the surplus, A. G. Meriwether has a lien upon the surplus itself. And although he prays for a personal decree against Lewis, yet as he also prays for general relief, and as Lewis claims that if he is made to pay for the surplus, it may be conveyed to him, or paid for to him by D. Meriwether, who is a party to the original, as well as the cross bill, and also prays for general relief, it is allowable under the proceedings, and proper as matter of equity, to subject the surplus in the first instance, if as between Lewis and D. Meriwether, the former is entitled to treat it as an indemnity against his liability to pay for it—or if he is entitled to elect either to have the surplus or its value, he should also be allowed either to subject the surplus, or to take a personal decree against D. Meriwether for its value, being liable himself to a personal decree against him for the whole of the complainant's claim, if he takes a personal decree against D. Meriwether, or for so much as remains unsatisfied by the sale of the surplus if that be subjected. It is necessary, therefore, to inquire briefly into the equities between Lewis and D. Meriwether, in reference to the surplus.

The main question in this inquiry, is whether Lewis, having conveyed the land for a gross sum, and as containing 160 acres, more or less, is entitled to make a

MERIWETHER
vs
LEWIS, &c.

*or less,"* is not
conclusive a-
gainst a claim of
vendor for pay
for surplus, or
vendee for defi-
ciency. So, if
the contract be
executory.

claim against his vendee for the surplus afterwards dis-
covered. Even this is perhaps too broad a statement
of the question, since Lewis claims nothing but by way
of defence or indemity, first against the claim of his
vendee himself, who demands payment at the rate of
$35 an acre for about seven acres and a half of the sur-
plus, corresponding with a like deficiency in the tract
conveyed to him by Murphey, and for which he paid
$35 per acre, but which, under his own designation of
the division line, was conveyed by Murphey to Lewis ;
and second, against the claim instigated perhaps by his
vendee, but set up by his remote vendor, for the addi-
tional surplus of 30 acres contained in the same tract,
to be paid for also at $35 per acre.

Although in some of the older cases in this Court, a
deed conveying a tract of land in consideration of a
gross sum, and as containing a designated quantity, with
the additional words "more or less," may have been
held to be conclusive against the claim for subsequently
discovered surplus or deficiency, the doctrine as dedu-
ced and demonstrated in the case of *Harrison* vs *Tal-
bott*, (2 *Dana*, 258,) and as since recognized and held by
the Court, is that such a deed is not conclusive against
the claim.   In the opinion rendered in that case, the
Court, after an elaborate review of the cases, state the
principle to be, "that when it is evident there has been
a *gross mistake* as to quantity, and the complaining par-
ty has not been guilty of any fraud or culpable negli-
gence, nor has otherwise impaired the equity resulting
from the mistake, he may be entitled to relief from the
technical legal effect of his contract, whether it be ex-
ecuted or executory."  In the same case, sales in gross
are divided into four classes, of which the third com-
prises "sales in which it is evident, from extraneous cir-
cumstances of locality, value, price, time, and the con-
duct and conversations of the parties, that they did not
contemplate nor intend to risk more than the usual
rates of excess or deficit in similar cases, or than such
as might be reasonably calculated on as within the range
of ordinary contingency;" and the fourth, "sales which
though technically deemed and denominated sales in

gross, are in fact sales by the acre, and so understood by the parties." And the Court say, that in either of the two latter kinds of sales, "an unreasonable surplus or deficit, may entitle the injured party to equitable relief, unless he has by his conduct waived or forfeited his equity."

We need not recapitulate all of the facts which bring this case, if not within the fourth, at least within the third class of sales, in gross or apparent sales in gross, as enumerated in the opinion referred to. The land was offered to D. Meriwether, for his brother, at $25 per acre, in cash, or with interest. On the 24th of November, 1845, he wrote to Lewis that his brother would give that price, payable in one, two, three and four years, without interest. On the 27th, Lewis answers, treating this as an offer of $4,000 in the designated instalments, without interest, and equal only to $3,000 cash; and requires $4,000, with 6 per cent. interest on the deferred payments. The sum of $4,000 being thus assumed as the result of the charge of $25 per acre, and the difference between the parties being not as to the price per acre, but as to the interest upon the deferred payments, the final offer by D. Merewether, for himself, of $4,000, with three per cent. interest on the deferred payments, must be considered as based upon and referring to the price of $25 per acre, as to which there was no difference between the parties, and as varying from the former propositions of each, only with respect to the interest, as to which it proposed the medium between no interest, as first offered by D. Meriwether, and six per cent. as asked by Lewis. Then, it is certain, not only from this negotiation, but from all the facts, that Lewis still supposed that there was no material variation in the quantity from 160 acres, as originally represented by D. Meriwether, and as stated in the deed from Murphey. It is incredible that if Lewis had any suspicion of a material excess, he would have left himself liable for it on his express covenant with Murphey, without making any provision for his indemnity in the sale to D. Meriwether. It may indeed be assumed, that believing there was no substantial excess or deficit,

Lewis intended in this sale to avoid all reclamation for such as might be found to exist. But this intention, though manifested in the deed itself, cannot conclude him, when it appears clearly to have been founded upon a *gross mistake*, induced in the first instance by the confident representations of his vendee, confirmed by the acquiescence of all concerned, concurred in by both parties, if both acted in good faith in this last sale, and which if he cannot be relieved from it, subjects him to a most oppressive loss.

D. Meriwether maintains that the sale was in gross, and not by the acre, and to prove this position, and also to show that he was ignorant at the time that there was a surplus, refers to the fact that he proposed that a clause should be inserted in the deed that any surplus or deficit should be paid for at $25 per acre, which was rejected. But it does not appear that this proposition ever reached Lewis himself, and the agent, who proves that it was made and rejected, proves that at the same time D. Meriwether reiterated his assertion that there was not the fraction of an acre, more or less, than 160 acres. The circumstance is however not entirely unimportant, since it tends with others, to show that D. Meriwether well understood that he was buying at $25 per acre, and that in the absence of the clause proposed he was paying for 160 acres, which he still affirmed to be within an acre of the true quantity. And its rejection, even by Lewis himself, would only prove what is otherwise manifest, that he desired no reclamation on either side for any anticipated excess or deficit, but intended to be, and supposed he was by this sale, freeing himself from all interest in the subject, except as to the consideration then agreed on.

Whether the proposition proves that D. Meriwether did not then suppose that there was a surplus, we need not inquire. It is not necessary that he should have acted in bad faith, to entitle Lewis to equitable redress. It is sufficient that there was a gross mistake as to the subject of the contract, and that it was at least as much, and in fact more attributable to the vendee than to the vendor. That both parties were actually and honestly

mistaken, does not diminish the equity of either. We assume, therefore, upon the statement of D. Meriwether himself, that he was ignorant of the existence of any surplus until after he got his deed from Lewis. It can but be remarked, however, that as soon as he had the deed recorded, the idea of making gain by the difference between its terms and those contained in the deeds from Murphey, seems to have entered his mind. And although he had for six years remained quiet, without any effort to ascertain whether he had got his full quantity, and whether Lewis had got a surplus from Murphey, he no sooner gets the whole of both tracts into his possession, under a sale and deed, which gave him whatever surplus there was in Lewis's tract without price, than he sets about ascertaining whether there had not been a deficiency in the tract conveyed by Murphey to him. And having ascertained, as he supposed, that there was a deficiency of 20 acres in his tract, and a corresponding surplus in the tract conveyed to Lewis, he wrote the letter of the 24th of January, in which avoiding the suggestion of there being a surplus, and evidently intending to produce the impression that there was no surplus, but a deficiency in one of the tracts conveyed to him by Lewis, he puts the question as to his understanding of the contract, and states his own, with the obvious purpose of extracting by this partial and disingenuous statement, an answer which would be favorable to his views. And it is said that the answer is a conclusive admission that the sale was in gross, without right of reclamation on either side, and that although the admission may have been extracted by artifice, Lewis having made it must abide by it.

We forbear drawing any inference from this artifice which might retroact upon the question, whether the proposition to insert a clause in the deed in regard to surplus or deficiency might not also have been an artifice, and whether D. Meriwether may not then have supposed, without knowing that there was a deficiency on his side, and a corresponding surplus on the other side of the division line. But we cannot concur in giving to the answer referred to, the conclusive effect con-

Admissions *en pais* are not conclusive except where third persons have acted upon them—they cannot be denied in such cases to the prejudice of such third person.

tended for. It is seldom that an admission *en pais* is conclusive upon the party. Perhaps it is never so, except when some other person has acted upon it, and its denial would be injurious to the interest acquired in the faith that it was true, and would therefore be in effect a fraud. On this principle, it would seem that the statement of D. Meriwether with regard to the quantity of land assigned to Lewis by the division line, and on the faith of which he acted throughout, should be much more entitled to a conclusive effect, which should preclude D. Meriwether from throwing any loss upon Lewis for his own benefit, by a subsequent contradiction or denial of the fact, than that Lewis should be concluded by any admission contained in this letter, which related entirely to a past transaction as well understood by D. Meriwither as by Lewis, and which led to no act on his part that would make its subsequent contradiction either injurious or fraudulent.

But it is to be observed, that there is nothing in D. Meriwether's letter which might draw Lewis's attention to a contemplation of his own position in case there should be a surplus, and nothing which might induce him to think that there was any deficit greater than might have been contemplated as probable, and that his denial of responsibility, even on the case as presented, is not absolute, but by reference to the deed, which as he says, shows that he did not intend to be responsible for deficit. It is to be observed too, that there was an essential difference in the attitude of the parties between the case of a surplus and that of a deficit, since in the latter case the liability of Murphey and of A. G. Meriwether, might be available to D. Meriwether, without responsibility on the part of Lewis, while in the former, Lewis would be responsible to his vendor without indemnity, if he was precluded under all circumstances, from making reclamation from D. Meriwether. While, therefore, Lewis no doubt intended to avoid all reclamation for minute excess or deficit, and might, if he had thought of it, have intended to avoid responsibility for any deficit however great, it would not necessarily follow that he intended to avoid or renounce

all claim for an unexpected excess of considerable mag-
nitude, and which would impose a heavy liability upon
himself.

But further, it is manifest from the entire letter, in
connection with that to which it is an answer, that
Lewis means to assert that he sold and was to be paid
for only the 160 acres for which he paid Murphey, and
that he sold as he did, for the purpose of avoiding all
reclamation, as well against him as in his favor. And
the letter of D. Meriwether, asserting that if there
should be a surplus, he was not to pay for it, also im-
plies the admission that he did not and was not to pay
for the surplus. It seems then, unreasonable, as matter
of construction, as it is certainly oppressive in result,
to say that the reference to the deed as manifesting an
intention not to be responsible for deficit, is conclusive
evidence that the sale was in gross, and therefore, leaves
Lewis without claim for the surplus for which he is
responsible to his vendors. If the surplus, or the pro-
bability or possibility of a material surplus, was left
wholly out of view in the contract, the sale was not a
sale in gross, of such a character as to preclude recla-
mation for unexpected and extraordinary excess. And
the fact that the price was estimated upon 160 acres
only, showing that surplus was not estimated or paid
for, shows that the sale was not in that class of sales
in gross, which precludes reclamation on the discovery
of a gross mistake. It is true that as the letter of
Lewis was not produced as evidence against him, but
under his own call, he cannot rely upon it as in itself
proving the truth of its own statements. But if any
inference unfavorable to him, is to be drawn from any
part of it, he is certainly entitled to have it all consid-
ered together, and in connection with that to which it
was an answer. So considered, we are of opinion that
it does not place him on worse ground with respect to
his present claim of indemnity out of the surplus itself
or its value, than that which, upon the deed itself and
other previous facts, he is entitled to occupy.

The material facts are, that D. Meriwether has, for
the consideration of $4,000, estimated as the price of

160 acres of land at $25 per acre, received a convey-
ance of the tract from Lewis, as containing 160 acres,
more or less, and that this quantity was assumed as
substantially correct, upon his own representations,
made with superior means of knowledge; and the
material question is, whether he can hold, for his own
use, the subsequently discovered surplus of $37\frac{1}{2}$ acres,
and claim from Lewis, through Murphey, $35 an acre
for so much of it as corresponds with the deficiency in
his own previous conveyance from Murphey, leaving
Lewis also liable to pay to A. G. Meriwether, for his
benefit, the same price per acre for the remaining sur-
plus of 30 acres.

Without elaborating this question further, we are

An agent show-
ed land which
his principal had
sold to a pur-
chaser from a
vendee of the
principal who
bought upon his
representation—
the agent after-
wards bought of
the purchaser;—
the deed called
for 160 acres,
more or less—
there was an ex-
cess of 30 acres;
the agent claim-
ed to hold it, but
sued his vendee
to have compen-
sation made to
his principal—
Held that he
should account
to his vendor.

satisfied that the discovery of such a surplus, equalling
nearly one fourth of the estimated quantity, amounting
in value, according to the last sale, to near $1,000, and
according to the sale to Lewis, to more than $1,300,
and conveyed by Lewis to D. Meriwether, without
price or estimate, evinces a gross mistake, of which an
ordinary purchaser could not take advantage by mere
force of the words "more or less" in the deed, and that
the relation in which D. Meriwether stood to the pre-
vious purchase of Lewis, and especially as having, by
his agency in it, induced the mistake by which he is in-
volved, absolutely precludes him in equity and good
conscience, from throwing any loss upon Lewis for his
own benefit, as the consequence of the mistake; and
that whether Lewis might or might not have set up any
claim against him for his own mere profit, on discovery
of the mistake, he is entitled to look to the surplus gra-
tuitously conveyed to him, or to its value, as an indem-
nity against the claims which its discovery has raised
up against him. How then, according to these princi-
ples, are the two portions of the surplus to be disposed
of for the indemnity of Lewis?

In his pleadings, Lewis avows, and we think there is
no reason to doubt, that if while he held the land it had
been discovered that there was a deficiency in the tract
for which D. Meriwether had paid Murphey, and a cor-
responding surplus, beyond what he had himself paid

for in the tract conveyed to him, he would have considered himself as holding the surplus in trust for the benefit of D. Meriwether, and would, without hesitation, have conveyed it to him.   As D. Meriwether evidently bought the land for his own use and not for sale, such a conveyance, making up the deficiency as soon as discovered, and giving him precisely what he had paid for and intended to buy, would, if accepted, have been an equitable satisfaction of all claim for the deficit itself, and therefore, of all claim for the surplus; and the Chancellor, if satisfied of the good faith of Lewis, would have so considered it, without regard to any change in the value of the land, arising from general causes; and would have held Lewis liable further, only to make fair compensation for the use of the land while innocently withheld by him.   The conveyance of the surplus having been in fact, made before the discovery, but gratuitously, that is without price or estimate, and under the same mistake induced by D. Meriwether himself, which had caused both the deficiency and the surplus, we think D. Meriwether is bound to keep this portion of the surplus as a satisfaction for the deficit, and cannot, so far, take advantage of the mistake as for his own profit, to throw upon Lewis the loss consequent upon a general depreciation in the value of land between the time when he paid Murphey for it, and the time when it was conveyed to him.   He has obtained what he bought, without additional cost, from the party who had received it by mistake, and the deficiency being thus supplied, his claim upon Murphey for it, and Murphey's claim upon Lewis for the corresponding surplus, is to that extent satisfied, leaving D. Meriwether entitled to demand from Lewis, nothing more than a fair compensation for the use of so much of the surplus for the six years during which it was held by Lewis. This being, in fact, all that the one has lost or the other gained, is all that can be equitably claimed or enforced on account of the deficit and corresponding surplus of about seven acres and a half.   And the question of rents or the value of the use of the land having been already litigated in the case, in consequence of a set-off claimed

by Lewis against Murphey, for having withheld the possession after it should have been delivered, we find that the whole farm of Lewis was worth $150 a year when Lewis purchased, and $125 for the last year before he sold, the average of which, for the six years, is $137 50 cents per annum for the whole, and less than 87½ cents per acre. But allowing one dollar an acre, forty five dollars is the whole sum properly chargeable to Lewis on this account. And we only add upon this part of the case, that should it, in any event, become necessary to locate this portion of the surplus, it should be laid off, or considered as laid off, upon the division line adopted in the deeds from Murphey, so as to interfere as little as practicable with the improvements, and not to interfere at all with the buildings and appurtenant lots on the land conveyed to Lewis.

With regard to the remaining surplus of 30 acres for which A. G. Meriwether seeks and is entitled to compensation, the principle already adopted in this opinion, and applied in disposing of the smaller portion, indicate that it should be applied as an indemnity to Lewis, in the most available manner that is consistent with what is due to D. Meriwether. In an ordinary case, the vendee upon the discovery of a surplus which he is not entitled to retain without further payment, might have a right, upon refusal of the contract price, to lay it off on any side of the tract at his option. But Lewis is entitled, in the present case, to use the surplus itself as an indemnity against loss. And, therefore, we are of opinion that unless D. Meriwether will elect to pay towards the satisfaction of A. G. Meriwether's claim, and subject to a credit of $45, chargeable to Lewis, as above the value of the surplus at the time of making the estimate, or so much thereof as may be required, such value to be ascertained by the Master under the supervision of the Chancellor, and considering the surplus as being thirty acres out of one hundred and forty contained in the tract, exclusive of the smaller portion located as above, and as of the average value of the said 140 acres; then the said thirty acres to be laid off by the Master, out of said 140 acres, to be of

average value, as near as may be, with the residue of said 140 acres, to be in convenient shape, injuring as little as practicable, the residue of the tract, and not interfering with the buildings or appurtenant improvements, nor if it can be avoided, with any cultivated land, should be sold, or so much as may be necessary for the satisfaction of A. G. Meriwether's demand, after making the deduction hereinafter directed. And for the residue not paid by D. Meriwether or by the sale of the surplus, he should have a personal decree against Lewis.

By this disposition of the surplus, D. Meriwether, who has risked nothing in his purchase from Lewis, will lose nothing for which he has paid, and nothing which he is entitled to retain without payment. Nor can Lewis possibly gain any thing. But in all probability he will still be a loser. And although A. G. Meriwether may be somewhat delayed in the coercion of his demand, if the surplus should be given up to be sold, he cannot justly complain of the short delay which may be necessary to the indemnity of Lewis, against a loss to which the complainant's own long delay has exposed him.

Lewis seems to be entitled to a small claim as a set off against Murphey, and which should be deducted from the sum to be decreed against him in favor of A, G. Meriwether. This claim for the detention of the possession for a few weeks, and for some damage committed upon the farm, we cannot precisely estimate, but suppose it should not exceed thirty five dollars, to be credited on the principal sum payable by Lewis for the surplus. The $45 chargeable to Lewis in favor of D. Meriwether, for the use of the portion of the surplus to which he was entitled, should be decreed accordingly, unless applied to reduce the sum payable by D. Meriwether for the thirty acres as above.

Wherefore, the decree as to each case, is reversed, and the two consolidated cases are remanded for proceedings and decree in conformity with this opinion. The appellant in each case, is entitled to his costs in this Court.

*Loughborough* for Lewis; *Guthrie* for Meriwether.