Judge Crenshaw
delivered the opinion of the Court.
Zachariah Hobbs, deceased, owned in his lifetime a tract of land in the county of Washington, supposed to contain 500 acres; and, after having sold 53 acres of the tract to Jesse Hobbs, he died, and the remainder of the tract descended to his only child, Lucy Grundy. And in 1829, Lucy Grundy and her husband, Joseph Grundy, conveyed the said remainder of the said tract, supposed to be 447 acres, to Samuel Grundy at $6 per acre. In 1835, Samuel Grundy sold the samedo David Beam, for the sum of $4000, and in 1839, made him a deed of conveyance-therefor. Joseph Grundy, died in 1844, and his widow, the said Lucy, in April, 1848, instituted suit in the Nelson Circuit Court, against the executors heirs and devisees of said Samuel Grundy, and against said Beam and John Thomas, who were in possession, alleging that she had recently ascertained that *270 there was a considerable surplus in the tract, and claiming compensation therefor. In the progress of the suit the land was surveyed, and a surplus of 101 acres and 26 poles, ascertained to exist.
it is immaterial wheiher a sale of land be by I he acre or in gloss, a Court of Chancery will relieve where the parties labor under a palpable mistake as to the quantity, and lhat quantity is beyond, what it may be they reas onably infeied intended to risk.
The executors and heirs of Samuel- Grundy make their answer a cross bill against Beam, in which they allege, substantially, the ignorance of said Samuel of the existence of said surplus, and that they knew nothing oí it until sued by said Lucy. They charge that their ancestor sold to Beam at $9 per acre, and was not paid for all the land in the tract by more than 100 acres, and that the surplus was conveyed to Beam by mistake — the entire boundary having always been estimated to contain what the original survey called for, to-wit, 500 acres, when, in truth, it contained more than 600 acres.
Lapse of time is relied upon by the defendants to the original, and by the defendant, Beam, to the cross bill; and it is insisted by him, that the sale to him was in gross, being for a tract of land described in the deed to him as a tract containing 500 acres more or less, with a specific boundary.
There is a surplus of 101 acres and 26 poles, and, unless it appears that the parties intended to risk the quantity, whatever it might be, it is immaterial whether the sale was by the acre or by the tract as containing by survey so many acres. Where sales are made by the acre, a less surplus or deficit, it is true, will induce the Chancellor to afford relief, than where they are made by the tract, supposed to contain, or as containing by survey, so many acres. But whether sales are made by the acre or in gross, courts of chancery will give relief, if it appears that the parties were under a palpable mistake as to the quantity mentioned, and that that quantity is beyond what they intended to risk, or, is less or more than “ might be reasonably calculated on as within the range of ordinary contingency.” We are satisfied that, in this case, the parties were under a gross mistake as to the number of acres in the tract. *271 The locality, and price of the land, the large excess, and the times at which the sales were made, and the facts that the title papers had all described the land as a tract containing by survey 500 acres, and that it was so known and estimated in the neighborhood, forbid our coming to any other conclusion. If, therefore, lapse of time does not constitute a bar, the complainants upon the original and cross bills are entitled to relief.
Limitation does not run against claims for mistake until it is discovered.
Where a wife unites with her husband in the c o nveyance of her land and surplus is conveyed, the limitations does not ran against her Tight to recover the surplus s o conveyed until she became dis-covert.
It is contended by the counsel of Beam, that, although in cases of fraud, time does not begin to run until the discovery of the fraud, such is not, and ought not to be, the rule in cases'of mistake. It is conceded by the counsel that, as the law is laid down in the case of Crane vs Prather, (4th J. J. Marshall, 77,) the rule is applied to mistakes as well as fraud ; but it was urged in argument, that this is the only case which recognizes this doctrine, and we are respectfully asked to review it.
We have done so, and find the same doctrine recognized in several other cases, and also in Story’s Equity. We are of opinion, therefore, that the statute of limitations which, in these cases, is five years, did not commence running until by the exercise of ordinary diligence the discovery of the mistake was made, or until it ought to have been made.
Lucy Grundy states that she did not, until a short time since, discover the surplus. This is a very loose and indefinite statement. What she means by a short time, may he more than, five, more than ten years; and, after such a lapse of time as intervened between the ■conveyance to Samuel Grundy, and the institution of her suit, her right to recover, if it depended upon so vague and uncertain a statement, might, and would be, very questionable. But, within five years before she commenced her suit, she was still a feme covert-, the land which was sold was her land, and, for the surplus which was conveyed by her and her husband, she in her own right, and not as administratrix of her husband is entitled to recover, if entitled to recover at all. If, therefore, she had known of the surplus in her hus *272 band’s lifetime, the statute of limitations would not have commenced to run against her, until she became discovert, and her suit having been commenced within five years after the death of her husband, she is not barred by the statute of limitations.
Where a mistake isMiseovered or caught t o have been discovered by the vendor more than five years before suit brought to recov e r for surplus ■land the chancellor will not grant relief.
The question now occurs, whether the claim for the same surplus, set up by Smuel Grundy’s heirs and executors in their cross bill against Beam, is barred by time. The council of Beam assumes that, although the complainants allege that they did not discover the surplus until sued by Lucy Grundy, they do not state that their ancestor acquired no knowledge of it after his conveyance, and, consequently, he may have known it before his death. But they-allege that, by a survey recently-made, it was ascertained that the boundary contains “upwards of one hundred acres more than Samuel Grundy ever knew or believed or supposed was contained in said boundaryAnd they state that they were ignorant of the surplus until sued by Lucy Grun-vdy. These allegations we -esteem sufficient to show, ‘that the discovery was made within five years before their suit, and according to the principle laid down in the case of Craig vs Prather, &c., supra the statute of limitations interposes no bar, unless the mistake aught to have been discovered more than five years before the commencement of their suit.
In the case of Ewin vs Ware, &c., 2 B. Monroe, 65, it said, that the statute of limitations “should be applied, whenever the mistake had been, or aught to have been, discovered .more than five years before the commencement of the suit;” Relief was refused in that case, because, in. the language of the Court, “the facts strongly conduced to show that the complainant was apprlzed-of the surplus five yeais at least before he set up his claim, and that he had reason to believe (as it seemed probable,) at the date of his conveyance, that there was a surplus in the tract, and that, continuing to reside in the neighborhood, he' aught, as a reasonably vigilant man, (o have ascertained the existence and ex *273 tent of the surplus, and especially, as others in the neighborhood had knowledge of it from about the date of his conveyance to Anderson, and seemed to have no motive for concealing the fact”.
It appears that, by the title papers in regard to the land in controversy, the survey has always been called and known as a survey ot 500 acres, and there is no good reason to suppose that Samuel Grundy ever knew or believed, that there was a surplus in the tract. It is true, that he and his representatives continue to reside in the vicinity of the land, and they might have ascertained the surplus, but there is nothing to show that they had ascertained it, or even suspected a surplus until the original suit was brought. And there is no testimony to show, that it was known in the neighborhood by more than one man, Gregory. He says that some 10 or 12 years prior to the time of giving his deposition, he surveyed the land with “Win. Knott as surveyor, and they made it contain 615 acres.” It does not appear at whose instance he and Knott made this •survey; whether Knott resides „ in the neighborhood; nor, whether he or Knott ever made known to others the fact which they had ascertained. It would seem, it is true, from the question which elicited this part of his deposition, that the complainants might have been informed of it, but at what time does not appear. Considering the time at which this survey was made, we conclude that Beam, must have been residing upon the land, and that the probability is stronger that he knew of its being made, than that Samuel Grundy knew it.
The facts, therefore, which appeared in the case in 2 B. Monroe, supra, do not exist in this case. The complainants have, it is true, continued to reside in the neighborhood of the land, but it does not appear that they or their ancestor suspected or believed, that there was a surplus in the tract. There was nothing, therefore, to prompt them to take any steps to ascertain the •certain number of acres which the tract contained. Had not the suit of Lucy Grundy been instituted, we *274 perceive nothing to induce the conclusion that we should ever have heard of a suit on the part of the complainants jn tjie cr0Ss bill for the surplus land. But, being; sued themselves, they turn to their ancestor’s vendee for the same surplus.
If they or their ancestor believed that a surplus ex-existed, they ought to be required to have used ordinary vigilance to ascertain it; and such is the rule which is recognized and approved in the cases of Crane vs Prather &c., and of Ewin vs Ware &c., supra.
In the former case, the suit was not instituted under eleven years after the conveyance from Crane to Prather. Prather conveyed the same tract, with the same boundary, to Thompson, and Thompson sold the same, with the same description, to three persons, who, in dividing it, ascertained the deficit. Neither party liad any reason to apprehend a deficit until, for the purposes of a division, the land was surveyed ; and hence, it was decided, that there had been no laches in not ascertaining the deficit sooner. So with Grundy, and his representatives — they had no reason to apprehend, so far as shown, that there was a surplus, until they were sued by Mrs. Grundy. There was, therefore, nothing to induce them to take any steps to find out the true quantity, when they thought it was correctly staled in the title papers. We are of opinion, therefore, that-the. complainants in the cross bill are entitled to relief.
It has been contended by counsel, that the surplus had been ascertained and settled in the lifetime of Sam. Grundy, but there is no admission, (as supposed.) nor proof that such is the fact.
The Circuit Court was of opinion, that the complainants in the original and cross bills, were entitled to relief, and decreed upon both bills the same amount of compensation, and this amount was ascertained by the contract price between Joseph Grundy and wife, and Sam. Grundy, and interest thereon to the time of rendering the decree. The price stipulated in the two. *275 sales being different, the measure of compensation should, of course, be different. The price stipulated between Joseph and Sam. Grundy was six dollars per acre, and that between Sam. Grundy, and Beam, being $4000 for the whole tract sold, was at the rate of •$8 94§ per acre. The surplus is 101 acres and 26 poles. In ascertaining the amount for which Mrs. Grundy is entitled to a decree, the surplus should be 'calculated at $6 per acre, and at $8 94f per acre to ascertain the amount which the executors of Sam. Grundy are entitled to.
The measures of compensation to the vendor for surplus land eon veyed shall be the price pet acre ior the num ber ol'a'ies in the surplus, and interest for such time e.« the. shatt cellor in his discretion under 1he circumstances of the case may think it equitable.
*275 The only remaining question is, whether interest should be given upon their respective amounts from the time of the respective deeds or contracts. And we are of opinion that, under the circumstances, it should not be given. The rule of compensation was investigated in the case of Meriwether vs Lewis, (9 B. Mon., 163,) and no case was found requiring as a general rule that interest should be given. The case of Rogers vs Garnett,(4 Mon. 271,) is there referred to, in which it is said that, whether relief should be had “by'a re-conveyance of the surplus, or compensation at the contract price, or at the present value, would depend upon circumstances.” And the Court add, “It is clear that the principle thus laid down, excludes from consideration, both interest upon the contract price, and rent for' the use of the land, unless the circumstances of the case-should make one or the other, an equitable ground of charge, and even then it would seem that this equity should operate only upon the question, whether the -vendor should have the land itself, or its contract price, o.r its present value.”
We have determined^ that as a matter of law, the 'complainants of both bills are entitled to relief. But, surely, claims which have lain dormant — one for at least seventeen years, and the other for at least thirteen, can demand from the chancellor no. particular favor. After so great a lapse of time, it may be impossible to prove many of the facts which attended the tran *276 sactions, or transpired afterwards, which might destroy the right of recovery entirely. As a matter of law, Mrs. Grundy, whilst a feme covert, was bound to no diligence, and could be guilty of no laches, nor can be held responsible for any negligence of her husband; yet) who doubts but that, in fact, she was as free to act in search of this surplus when covert, as when discovert, or that her husband would have agreed to unite with her in a suit to recover her rights. And, at no time, since the sales and conveyances were made, was it out of the power of any of the parties to ascertain the number of acres in this tract of land. Nothing was necessary but a surveyor, chain-carriers, and compass. They laid by, and failed to make an effort for the discovery. True, that, in accordance with what we understand tobe the settled law, we decide that compensation must be made, but, when called upon to increase this compensation by the addition of interest, we have a right to look into the circumstances, and if they do not favor the call, to refuse it.
Interest in this case given irom the time of filing ilie respective bills.
As a general rule a party ought not to be bound to pay interest until he is in default, and can it be said that he is in default until it is ascertained that he ought to pay? We think not. It may be said that the vendors had the use of the land, and, therefore, they ought to account for interest. But it may be replied, that it is by no means certain that the vendees have received a single dollar more profit by having in possession the whole tract, than if they had possession of the remainder only, after deducting the surplus. A vendee in possession has a right to surrender the surplus off one side or end of the tract, which it is probable, in a tract of the size of this, has not added any thing to his income. Besides, it is contrary to the policy of the law, to encourage men to sleep upon their rights with the expectation that they can wake up at any remote period of time, and receive the“ same countenance from the Courts as is extended to the vigilant; and this, to the disturbance of the tranquility of the community. *277 the peace and happiness of families, and, it may be, to the ruin of some who had long reposed in fancied safety and security. We think that in cases like this, where one’s rights can be ascertained at any day, and where there has been such long delay, it is, in general, extending the rule far enough, to allow a recovery of the contract price at any time within five years from the discovery of the mistake. It may be worthy of en-quiry, whether, under ordinary circumstances'', it would not be a safe and wholesome rule, to compel a party to make the discovery within five years, upon pain of forfeiting his claim. ' Nothing is more harassing and vexatious, than to have our security suddenly disturbed by the unwelcome salutation of a dormant claim.
¡¡ Grigsby and Thurman for Grundy’s ex’or.; B. Monroe and Wickliffe for Lucy Grundy; B. Hardin and Reed for Beam.
We think, therefore, that interest upon the respective- amounts arising from the surplus, should be calculated only from the time of filing the respective bills. But, Beam must be allowed to make his election to pay the money, or surrender to Grundy’s heirs and devisees the amount of the surplus, to be laid off at one side or end of the tract.
Wherefore the decree of the Circuit Court upon the bill and cross bill, is reversed, and the causes remanded, that a decree may be rendered in conformity to this opinion.