## Jordan et al. v. Howard.

(Decided March 25, 1932.)

(As Modified on Denial of Rehearing Dec. 13, 1932.)

JOHN H. GARDNER, FORMAN & FORMAN, and ROBT. H. WINN for appellants.

WOODFORD HOWARD for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

In 1913, under an order of court, a large body of land of B. F. Gardner, a mental incompetent, was sold to Harris Howard for $26,625. Complications developed over the title and attacks were made upon the validity of the sale. One of the cases reached this court in Gardner v. Howard, 197 Ky. 615, 247 S. W. 933. Some of the heirs were not parties to that suit and another was filed by them. Howard appears to have made a settlement with most if not all of the interested parties. The case at bar was instituted by Howard, the purchaser, against the heirs of Gardner, who had died in 1920, for a shortage in the acreage of the tract he had acquired under the judicial sale. Several substantial defenses were set up and attacked, including an issue of fact as to there actually being a shortage. Plaintiff's deed called for a body of land as described hereinafter, and which he says was for 1,200 acres. He claimed in the suit first that there were only 1,004 11/17 acres, which was corrected to an allegation of 1,063 11/17 acres. Following a judgment for $3,-921.38, covering a shortage of 136 6/17 acres at the average price, and interest, in favor of the plaintiff, the contest has been brought to this court. Waiving all others, it seems sufficient to consider and discuss only one of the interesting points developed and argued. The court is of the opinion that plaintiff's right to recover for the shortage, if any such right existed, was barred by limitations.

An action for shortage in acreage, in the absence of a specific warranty as to quantity, is founded upon fraud or mistake by reason of which one has been required to pay for something he did not get. Burton v. Cowles' Adm'x, 156 Ky. 100, 160 S. W. 782; Morris v. McDonald, 196 Ky. 716, 245 S. W. 903; Riner v. Catron, 230 Ky. 290, 19 S. W. (2d) 970. There is no claim

of any actual or affirmative fraud in this case. It is based upon a mistake, and in the early case of Crane v. Prather, 27 Ky. (4 J. J. Mar.) 75, reaffirmed in Grundy's Heirs v. Grundy, 51 Ky. (12 B. Mon.) 269, and consistently followed, the same limitations are held to apply to a mistake as to fraud in the conveyance of land.

For convenient consideration we quote the germane portions of the controlling statutes.

Section 2515, establishing the period of limitations, is:

"An action for relief on the ground of fraud or mistake * * * shall be commenced within five years next after the cause of action accrued."

Supplementing this statute is section 2519, defining the term "cause of action accrued," to wit:

"In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. * * *"

The provision has been materially modified by interpretation, or, as some may choose to call it, by judicial legislation. In the Grundy Case, supra, following Ewin v. Ware, 41 Ky. (2 B. Mon.) 65, the limitation under the statute was held not to commence "running until, by the exercise of ordinary diligence, the discovery of the mistake was made, or until it *ought to have been made.*" This rule, resting upon the equitable doctrine of laches, has been declared so repeatedly and consistently as to have become as much imbedded in the statute as if it had been so expressed in the enactment.

Going much further, section 2519 qualifies the limitations established by section 2515 by this proviso:

"* * * But no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

The principle and interpretation of the two sections are considered in Eversole & Co. v. Burt & Brabb Lumber Co., 160 Ky. 477, 169 S. W. 846; and Johnson v. Fetter, 224 Ky. 788, 7 S. W. (2d) 241.

To avoid the effect of these statutes, the plaintiff

contended that he did not discover that there was a shortage until September, 1925, when he was notified of it by the company to whom he had sold certain timber, and that the suit was brought within four months after he definitely ascertained that fact and the quantity short. This right of avoidance was vigorously controverted by invoking the concomitant rule as to his duty to discover the mistake by the exercise of ordinary diligence; and that charge was brought in issue by the pleadings and the evidence.

This suit was filed May 12, 1926. The sale of the property was made September 1, 1913. The commissioner's report was filed and deed executed bearing the approval of the judge, on January 9, 1914; but for some undisclosed reason no order confirming the report and directing the execution of the deed was entered until December 28, 1918, on which date it was entered nunc pro tunc. Plaintiff had been put in possession of the property upon the execution of the deed in January, 1914. He did not finish paying for the land until about the date of the maturity of the last purchase money bond, September 1, 1918; and this is the date he puts forward as being that from which the limitations began to run, if it be decided that the latter date of September, 1925, when he was advised of the shortage, should not control. This would bring the case within the ten-year limit.

The sale of the property, the delivery of the deed, and the taking of possession all occurred more than ten years before the filing of the suit to recover for a shortage. It would, therefore, seem at first impression that the positive injunction against maintaining the action after the lapse of ten years "from the time of making the contract or the perpetration of the fraud" or, as enlarged by the interpretation, the making of the mistake, is an insurmountable barrier. Statutes of limitations are based on the accrual of a right of action and, therefore, begin to run from the time the cause or the foundation of the right came into existence. Suits of this character when the purchase money has been paid are regarded as being founded upon an implied contract to refund money fraudulently or mistakenly collected. That doctrine rests upon the idea that the purchaser has paid for land he didn't get and there is no injury or loss until the money is paid. Hence, the cause of action arises upon the final payment

and limitations begin to run then. Nave v. Price, 108 Ky. 105, 55 S. W. 882, 21 Ky. Law Rep. 1538; Burton v. Cowles' Adm'x, supra; Graham's Adm'r v. English, 160 Ky. 375, 169 S. W. 836, 837; Eversole & Co. v. Burt & Brabb Lumber Co., supra; Morris v. McDonald, supra; and Robertson v. Jefferson County, 205 Ky. 479, 266 S. W. 27.

Under those authorities, we sustain appellee's alternative claim that limitations did not commence until the date the final payment was made for the property, which was September 1, 1918. Consequently, his cause of action was not barred by the ten-year qualification placed upon the provisions of section 2515 of the statute quoted.

Since more than seven years had elapsed between the final payment and the filing of the suit, the plaintiff's action was barred by the five-year statute unless he could show that by the exercise of ordinary diligence and prudence he did not and could not have discovered the shortage alleged sooner than five years before filing the suit, that is to say, between January, 1914, and May 12, 1921, for the law does not encourage those who are negligently careless or aid those who are willfully blind. The burden was upon the plaintiff to establish that fact. Gragg v. Levi, 183 Ky. 182, 208 S. W. 813; Elkhorn Coal Corporation v. Hite, 225 Ky. 735, 9 S. W. (2d) 1083; Jennings v. Fain, 226 Ky. 290, 10 S. W. (2d) 1101.

Until he was twenty-five years old, appellee had lived within two miles of the property and knew the greater part of it to be rough mountain land. He testified that for some time he had it in mind to buy the property when sold and that he was principally interested in it for the timber. It was the quantity of timber and not the quantity of land that particularly concerned him. The advertisement for the judicial sale, which was had September 1, 1913, officially described the property as "containing by estimation and survey about 1,200 acres, be the same more or less"; and further (apparently copying description in a deed of 1860):

> "It is supposed by the parties to this indenture that the aforesaid and above described tract or boundary of 1,200 acres, more or less, includes all the land contained in the following tracts or parcels of land, to-wit."

Deeds and patents are then referred to, and three parcels of land are described with an aggregate acreage of 1,206, although the total is not mentioned. There is, however, added:

> "But should it not be so, whatever of these said tracts or parcels of land are not included in it, the same is hereby for the consideration above named in addition to said boundary of 1,200 acres, more or less, also bargained, sold and conveyed," etc.

While not a part of the official notice of sale, the advertisement carried a preliminary statement that the sale was of the "Finest and Largest Farm in Magoffin County" containing "about 1,000 acres, 200 acres of which is Licking River bottom, 100 acres of cleared hill land, and 700 acres of timber land." It referred to another tract not here concerned and to the approximate number of trees and quantity of timber and also that the land was underlaid with three good veins of coal. The description was very lengthy and the lines given were partly by magnetic calls and measured distances and partly by ridges, streams, and fixed objects for extended lengths. Plaintiff says that he read the advertisement carefully a time or two and relied upon the representations of the survey given as being correct. He also rode over the tract and knew the boundary lines, but says he "didn't know how to guess at the acreage."

Failure to make a survey within the period of statutory limitations is not conclusive evidence of omission to exercise reasonable diligence to ascertain a shortage in acreage. It was so recognized in Crane v. Prather, supra; Grundy v. Grundy, supra; Barton v. Jones, 206 Ky. 238, 267 S. W. 214, 215; Morris v. McDonald, supra. But where the land is of an extended area, with irregular and indefinite lines and boundaries, failure to have the survey made may strongly, if not conclusively, manifest an absence of due diligence. Dye v. Holland, 67 Ky. (4 Bush) 635; Nave v. Price, supra; Elkhorn Coal Corporation v. Hite, supra. So, whether a survey ought to have been had in a given case must depend upon the particular conditions and facts. In the case at bar the conflicting statements and ambiguity in the advertisement of the sale at which the property was bought, as well as the nature of its description, were such as to require a survey in order to ascertain

the exact, or even the approximately exact, acreage. The evidence of the surveyors who years afterward did survey the land shows there was a considerable difficulty in doing so and disclosed inaccuracies in the calls taken from the deed of 1860. Indeed, it is by no means certain that there was a deficit as great as that claimed by the appellee. Under these circumstances and other conditions disclosed in the record, it seems to us that due diligence demanded a survey within the period of limitation.

Accentuating the application here of this law of diligence is the fact that, though conflicting with other statements therein, the advertisement of sale which the plaintiff relied upon contained notice that the farm contained about 1,000 acres. This it would seem was sufficient to put one on notice that he could not rely altogether upon the statement of the area as being 1,200 acres "by estimation and survey." Whatever is sufficient to put a purchaser upon inquiry as to facts is equivalent to full notice of all facts that such inquiry would have disclosed to him. May v. C. & O. Ry. Co., 184 Ky. 493, 212 S. W. 131. Furthermore, for nearly eight years the plaintiff had been making contracts and selling the timber, as well as about 100 acres of the land, and must necessarily have become more familiar with the area than at the time of his purchase. He testified, however, that he had no knowledge of the deficit until it was suggested to him by the purchaser of the oak timber a few months before he filed suit. It seems to us that the suggestion first made in the notice of sale more than twelve years before was entitled to some consideration. That purchaser had bought the timber in 1920 under a contract to remove it in five years. It was diligent enough to have had a survey of the land made for its own information, although plaintiff says the acreage had nothing to do with the price he received for the timber.

Without reciting further details of the evidence, but considering it in its entirety, we have no difficulty in concluding that plaintiff failed to prove that he could not have discovered by exercise of reasonable diligence that the alleged shortage existed before limitations began to run, and that his right of action was barred.

Accordingly, the judgment is reversed with directions to dismiss the petition.