## Great Western Petroleum Corporation v. Samson, et al.

(Decided November 18, 1921.)

### Appeal from Barren Circuit Court.

1. Records—Index.—It is the duty of county clerks to index the recording of deeds and other instruments, and if they are lodged for record and the fees paid, or if they are actually recorded, a subsequent purchaser of the property acquires no rights over the beneficiary in the non-indexed instrument.

2. Mines and Minerals—Forfeiture of Oil Lease.—The forfeiture of an oil lease may be waived if the rentals are accepted after the occurrence of the forfeiture and with knowledge thereof, the grounds of forfeiture are waived.

3. Mines and Minerals—Oil and Gas Lease—Notice.—Notice to the lessee in an oil lease demanding development may be given outside of the state and is not required to be served by an officer, and it must be given to the lessee or some agent or representative having authority to receive it, but the requirement in the notice may be waived by accepting rentals after the time for the demanded development has expired.

4. Mines and Minerals—Lease—Assignment—Acceptance.—The acceptance of an assignment of an oil lease in a foreign state does not render the assignee, a corporation, liable to the provisions of section 571 of Kentucky Statutes, nor does the section apply to an executed contract.

5. Mines and Minerals—Lease—Assignment.—Although a transaction involving the assignment of a lease may be voidable or unenforcible as against the assignee, yet that fact will not authorize a cancellation of the lease by the lessor or his vendee, since the

only thing to be cancelled in that case is the assignment of the lease, leaving the assignor the owner of the lease and entitled to the benefit of its obligations.

S. E. JONES and V. H. JONES for appellant.

BASIL RICHARDSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On May 23, 1917, J. W. Henderson and wife executed an oil lease on seven hundred (700) acres of land in Barren county to J. N. Thompson, which was to remain in force for a term of ten (10) years and as long thereafter as oil and gas is produced from the premises by the lessee, his heirs or assigns. It was stipulated therein "that this lease shall become null and void and all rights hereunder shall cease and terminate unless a well shall be commenced on the premises within (6) six months from the date hereof or unless the lessee shall pay at the rate of ten (10) cents per acre yearly in advance when such operations are delayed from the time above mentioned for the commencement of each well. . . . Such payments may be made direct to the lessor or deposited to his credit in Trigg National Bank, Glasgow. Ky."

On June 30 thereafter Thompson, by writing duly executed and acknowledged, sold and transferred the lease to the appellant and defendant below, Great Western Petroleum Corporation, which was incorporated under the laws of the state of Delaware, but had its principal office in the city of Chicago, Illinois, where the sale and transfer of the lease to it, by Thompson, was executed. On January 5, 1918, the lease, and the written transfer thereof to defendant, were each recorded in the Barren county clerk's office, but it appears that through oversight or mistake the recording of neither paper was indexed.

There was no well bored or commenced within the six months stipulated therefor in the lease, but at the expiration of that time a check for $70.00, covering the agreed advance rentals to be paid in that event, was deposited by defendant in the Trigg National Bank of Glasgow, Kentucky, in accordance with the terms of the lease, which extended the privileges of the lessee thereunder to November 23, 1918, and on that day it deposited a similar check in the bank in payment of the following year's rental, and which extended the lease to November 23, 1919. On February 5, 1919, Henderson and wife sold the

seven hundred (700) acres of land by deed duly executed and acknowledged to the appellees and plaintiffs below, T. J. Samson, L. A. Depp, J. J. Nuckols and Stanley Warder, and they filed this action on May, 30, 1919, against defendant, as assignee of the Thompson lease, seeking to cancel it as a cloud upon their title upon the grounds that, (1) they were innocent purchasers of the land without actual or constructive knowledge of the lease; (2) that it was procured by fraud on the part of Thompson, the lessee; (3) that Henderson had notified defendant that he would no longer accept rentals in lieu of development and he demanded it, and (4) that defendant had not complied with section 571 of the Statutes by filing with the secretary of state the statement therein required. Those grounds were controverted and upon final submission the court rendered judgment sustaining the prayer of the petition, from which defendant appeals. Neither the judgment, nor any part of the record informs us of the ground or grounds upon which the court acted, and we will therefore determine each of them in the order named.

1. The duty of indexing deeds, leases, and other instruments conveying an interest in land is imposed by section 513 of the statutes upon the county court clerk in whose office the record of such instruments is kept, and there is no duty anywhere imposed upon the purchaser or conveyee in such instruments to see that the index is made by the clerk. When a recordable instrument is lodged for record with the clerk and the fees paid, the one to whom it is made has performed all the duty required of him by law, and his rights under the instrument can not be affected by a subsequent purchaser or lien holder, because of any failure on the part of the clerk to properly index his muniment of title; especially so after the instrument was recorded in a book properly provided for the purpose. This court so held in the case of Webb v. Austin, 22 Ky. L. R. 764, and cases in point are Smith v. Chapman, 153 Ky. 70, and others therein referred to. As heretofore seen, both the lease and its transfer were of record in the proper office at the time of plaintiffs' purchase, and this furnished to them constructive notice, although neither record was indexed as required by the statute, *supra.*

2. This ground, relied on for the relief prayed, is bottomed on the fact that on the same day, but after the lease was executed, a writing was prepared which was

stated to be, "between J. S. Thompson, of Indianapolis, Ind., party of the first part, and the landowners situated in the neighborhood of the Henderson farm, south-west of Glasgow, Kentucky, parties of the second part." In that writing the second parties agreed to secure, without cost to the first party, oil and gas leases "on three thousand to four thousand acres of land in the neighborhood of the said Henderson farm," which were to be taken in the name of Thompson, the party of the first part, and to be turned over to him. In consideration of the procuring of the leases therein mentioned, without cost to him, Thompson agreed to drill a well in the neighborhood of the Henderson farm within six months thereafter, and to deposit in the Trigg National Bank at Glasgow the sum of $500.00 to be forfeited to the lessors if the well was not drilled as agreed within the time stipulated. No well was drilled within that time, nor was the forfeit of $500.00 paid, and it is claimed that these failures not only operated to forfeit the lease executed by Henderson and wife to Thompson, but that the latter fraudulently procured his lease through the representations made in the collateral writing. If the collateral writing had been fully executed, as therein contemplated, and its provisions had not been waived, the contention of plaintiffs' counsel would be unanswerable; but it appears that no one but Henderson and a neighboring farmer, by the name of William Siddens, subscribed it, and they did not own the acreage designated in it. By its terms the duty was imposed upon Henderson, and neighboring farmers, to procure the necessary number of signatures thereto, which they failed to do, and the project therein contemplated, as the record shows, was abandoned. But whether so or not, Henderson admits that after the time for the performance of that contract by Thompson he accepted rentals due on his lease, which, according to well settled principles of law, was a waiver on his part of Thompson's non-performance of the terms of that contract. Hence, this ground is without merit.

3. This ground is based upon the fact that Henderson, some time in 1918, told a young man who was an employe of the Trigg National Bank that he would not accept the rental which had been sent there for him, and for the bank to send it back, and that he wanted the lessee "to drill." He further stated that the reason why he rejected the rent was because he thought his lease was out, but that "After investigating it and finding out they had

it on it for 10 years I didn't know anything to do but take it and afterwards taken the rental.'' He does not say that he took the rentals for the year following November 23, 1918, but it is undisputed that the amount was sent to the bank by defendant according to the terms of the lease; and this, under the rules announced in the two recent cases of McNutt v. Whitney, 192 Ky. 132, and Ohio Valley Oil and Gas Company v. Irvine Development Co., idem 766 (decided November 15, 1921), constituted a valid payment by the lessee, unless the conversation between Henderson and the young man in the bank was a notice to develop and it was not afterwards waived. That it was insufficient for that purpose is clear to our minds. The bank was only the conduit or mutual agent, agreed upon, through which the payment of rentals was made, and it was in no sense a representative agent of the defendant in its general business matters. Besides at that time, as we have seen, the records of Barren county showed defendant to be the owner of the lease and, in addition, the checks given for the rents were signed, "Great Western Petroleum Corporation, by W. R. Jones,'' and were issued from Armott, Missouri. This character of notice is not required to be served on the party to be affected by an officer; nor is it required to be given at any particular place, and to be efficacious it should be given to the owner of the lease, if known, (which was true in this case, as we have seen), or to some agent authorized to represent him in the matter. Moreover, the rental, as we have seen, was accepted by Henderson after he had the conversation with the young man in the bank, and if his notice had been sufficient he waived it by his act in accepting it.

4.    There are four answers that may be made to this ground, which are:. (a), The business which the defendant carried on, if any, was the *acceptance* of the transfer of the lease to it by Thompson, which occurred in the state of Illinois and not in Kentucky; (b), that transaction was fully executed when this action was filed, and no complaint can be made of it, unless defendant took some affirmative step toward enforcing the lease obtained by the assignment, which action on its part could be defeated, because of a non-compliance with the statute, if the matter was such as came within its purview, since the non-compliance therewith renders the transaction voidable (or rather non-enforcible) and not void. E. C. Artman Lumber Co. v. Bogard, 191 Ky. 392, and cases referred to

therein; (c), defendant filed with the secretary of state, in his office at Frankfort on July 27, 1917, a statement signed by its president which was addressed to that officer saying: "Sir: Notice is hereby given that the place of business for the Great Western Petroleum Corporation, a corporation of the state of Delaware, in Kentucky is Glasgow and that J. P. Lewis of Frankfort, Kentucky, is our agent thereat, upon whom process may be served in any suit that may be brought against our company within the state of Kentucky. Done at Chicago this 27th day of July, 1917." We think this was, at least, a substantial compliance with the statute. Finally, (d), if the other foregoing reasons (a), (b) and (c) were eliminated the fact of non-compliance with the statute by defendant could not operate to serve Henderson or his vendees, the plaintiffs, since if the transfer of the lease by Thompson to the defendant was nullified the only effect would be to revest in Thompson the benefits of the lease, and it would continue as an encumbrance upon the land, which, as we have seen, was kept alive by the proper payment of the rentals.

Having arrived at these conclusions, it results that the court was in error in rendering the judgment appealed from, and it is reversed with directions to dismiss the petition.