## Elkhorn Coal Corporation v. Hite, et al.

(Decided October 12, 1928.)

### Appeal from Floyd Circuit Court.

1. Records.—Filing of deed for record with county court clerk furnished constructive notice thereof, where recording fees were paid and acknowledging certificate was signed by clerk, though his name was omitted from record by oversight or mistake in transcribing certificate.

2. Limitation of Actions.—To sustain action for relief against fraud or mistake, brought after five years and within ten years from commission thereof, so as to be within provisions of Ky. Stats., sec. 2519, extending five-year period allowed by section 2515, petition must allege, and proof show, that plaintiff did not, and could not by reasonable diligence, discover fraud or mistake until within five years before commencement of action.

3. Limitation of Actions.—Where facts constituting or showing fraud appear from public records, required by law to be kept and open to defrauded party's inspection, his ignorance of fraud will not postpone operation of five-year statute of limitations (Ky. Stats., sec. 2515), under section 2516, and record of deed is within rule, where facts constituting fraud appear on face of recorded deed.

4. Limitation of Actions.—Parties to suit for division of minerals under certain tracts of land between joint owners being chargeable with notice of defendant corporation's title to minerals under tract alloted to it by agreed judgment and of conveyance of oil and gas thereunder to it by division deed, plaintiffs' right to sue for reformation of court's orders and deed by expunging references to defendant's ownership, or such conveyance, of oil and gas, was barred within five years thereafter, under Ky. Stats., sec. 2515, and they were not entitled to extension of time under section 2519 on ground that they did not actually discover alleged mistake until within two years before filing action.

E. C. O'REAR, J. WOODFORD HOWARD and W. P. MAYO for appellant.

B. F. COMBS and COMBS & COMBS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Prior to June 25, 1901, Walter S. Harkins owned all the minerals of every kind and description, including oil and gas, in, to, and under a tract of land in Floyd county, described in deeds as containing 665 acres, but actually containing more than 800 acres. On that date he sold and properly conveyed one-half undivided interest in

such minerals under that tract to one J. P. Morse, who later died intestate and the owner of the mineral interest thereby conveyed. His heirs who inherited that interest conveyed it to the appellee and plaintiff below, W. F. Hite, who had some kind of secret trust arrangements with the other plaintiff and appellee, James Salisbury, whereby the latter became jointly and equally interested as vendee with Hite in the deed executed by the Morse heirs; but that interest was not attempted to be adjusted between those two, who were plaintiffs below in this action, until during or after the division suit hereinafter referred to.

The deed executed to Morse by Harkins in 1901 was at once lodged with the county court clerk of Floyd county for record, and it was recorded within a short time after it was lodged for that purpose; but in transcribing the certificate of the clerk who took the acknowledgment thereto his name was omitted from the record by oversight or mistake, thus making it appear from the record that the deed was not acknowledged by any officer, nor was its execution witnessed and attested as required by our statute. So that it is doubtful if the record alone, as so made in the office of the county clerk, would be sufficient to furnish constructive notice, but that insufficiency was supplied by the filing of the deed for record in the clerk's office and payment of the recording fees as required by law, provided the original acknowledging certificate to the deed was actually signed by the officer taking the acknowledgment. The original deed in this case was so filed for record, with the payment of the recording fees, and the acknowledging certificate of the Floyd county court. Therefore, under the doctrine of the cases of Webb v. Austin, 58 S. W. 808, 22 Ky. Law Rep. 764, and Great Western Petroleum Corporation v. Samson, 192 Ky. 814, 234 S. W. 727, constructive notice was furnished by the filing of that deed for record with the county court clerk of Floyd county.

On May 5, 1903, Harkins and wife, who still owned one undivided half of all of the minerals under the tract, attempted to convey all of them (ignoring the prior conveyance of half thereof to Morse) to the Kentucky Coal Land Company. But in the deed to that company Harkins expressly reserved from the conveyance the oil and gas under the tract; the effect of both conveyances being to convey to Morse a one-half undivided interest in all the minerals under the tract, including oil and gas, and

a one-half undivided interest in all the minerals in the other half to Kentucky Coal Land Company, except oil and gas. Morse and the Kentucky Coal Land Company thereby became the equal joint owners of all the minerals under the entire tract, except the oil and gas, which was jointly and equally owned by Morse and Harkins. The appellant and defendant below, Elkhorn Coal Corporation, by mesne conveyances became the owner of all the mineral interest conveyed by the second deed of Harkins executed by him to the Kentucky Coal Land Company, and in May, 1919, plaintiff Hite was the owner of a half undivided interest of all the minerals under the tract and defendant, Elkhorn Coal Corporation, was the owner of the other half, except the oil and gas, the half undivided interest to which was owned by the heirs of Harkins, who in the meantime had died intestate.

On May 13, 1919, Hite filed his equity petition in the Floyd circuit court against defendant, Elkhorn Coal Corporation, in which he alleged that he and defendant were the joint owners of all the minerals in, under, and to three separate described tracts of land, including the one involved in the instant case, and prayed for a division according to surface of all three of the tracts. He, of course, alleged that he was the owner of an undivided half interest in and to all the minerals in all three of the described tracts, but defendant, by its answer in that division suit, denied plaintiff's title to any of the minerals, upon the ground that its remote vendee was an innocent purchaser of the whole of the minerals without notice of the deed to Morse under which Hite claimed, upon the theory that the failure of the clerk in recording the Morse deed to transcribe the name of the acknowledging officer to the certificate attached thereto made that instrument an unrecordable one, so that its actual record furnished no constructive notice.

After the pleadings were completed in that division suit, the parties agreed to a surface division of the minerals in all three of the tracts, and the attorney representing both parties drew a judgment in accordance with the agreement. A special commissioner to make the conveyance was agreed upon, and she executed deeds in accordance therewith, and which were prepared by the same attorney, and in them plaintiff Hite, in this suit, and also in that one, was conveyed all of the minerals in and to the portion allotted to him, while defendant in

that, and also this, suit, was conveyed all the minerals in and to the portion of the land allotted to it. After such deeds were acknowledged and filed, that division suit went off the docket.

On January 6, 1926, appellees and plaintiffs below W. F. Hite and James Salisbury filed this equity action against appellant and defendant below, Elkhorn Coal Corporation, in the Floyd circuit court, in which they alleged substantially the foregoing facts, including those manifesting the interest of Salisbury and how he acquired it, and in which they averred as cause of action that the judgment, the order appointing the commissioner, and the deed executed to defendant in the division suit whereby it was adjudged, and defendant was conveyed, a half undivided interest in and to any of the oil and gas under the 665-acre tract, was and is erroneous and brought about by the mutual mistake of the parties, and plaintiffs prayed that the complained of orders and the commissioner's deed to defendant be corrected and reformed by expunging therefrom any reference to the ownership or conveyance to defendant of any of the oil and gas under that tract, because of the fact that it was never the owner of any such minerals, and that the division deed, as well as the orders in the division suit preceding it whereby defendant was adjudged and conveyed a half interest in and to the oil and gas under that tract, was a mistake, participated in by all the parties to the division action, and that plaintiffs did not discover such mistake until about two years before the filing of this action, and could not have done so by the exercise of ordinary diligence.

Some amended petitions were filed in which plaintiffs alternately prayed that, if the reformations asked for could not be made, it then be adjudged that plaintiffs were entitled to all of the oil and gas under the portion of the tract allotted to them, and that all of such two minerals contained in the portion allotted to defendant be adjudged to the Harkins heirs. The answer of defendant was a denial of the material averments of the petition, with a plea of the five years' limitations as is prescribed in section 2515 of our present Kentucky Statutes. The reply sought to avoid that limitation under the provisions of section 2519 of the same Statutes, because, as alleged, plaintiffs did not discover the mistake until about two years before they filed this action, and could not have done so by the exercise of ordinary diligence. Proper

pleadings made the issues, and, after taking extensive testimony, the court, on final submission, sustained the prayer of the original petition and corrected the deed executed by the commissioner in the division suit by expunging therefrom all of its conveying language of any oil and gas under the portion of the land so allotted and conveyed to defendant, and, from that judgment, it prosecutes this appeal. Many points are argued and discussed . in briefs of counsel, a number of which we think have no relevancy to the questions involved. Clearly, the judgment was erroneous, if the defense of limitations is applicable, and which, if found by us to be true, it will not be necessary to discuss any of the other questions argued in briefs.

In the first place it will be observed that in neither the division suit nor in this one were the Harkins heirs made parties, and whatever may be the final determination of the question as between plaintiffs and defendant in this action it will not affect the Harkins heirs. For that reason it is doubtful if .plaintiffs are in a position to maintain this action; but we have concluded to ignore that question (expressing no opinion upon it), and to determine the merits of the controversy upon the theory that plaintiffs have an unquestioned right to do so.

At the outset we are met with the argument that, if it should be conceded that there was a mistake in the respects contended for by plaintiffs, then it was only an unilateral one; there being no proof that defendant, or any one representing it in the division suit,· committed any mistake or was guilty of any fraud. It is admitted by counsel for appellees that, in order to obtain the reformation sought by this action, the mistake, if the suit· is based upon that ground, must be mutual, or, if not so, that there must be a mistake committed by plaintiff and fraud perpetrated by his opponent. We must admit that this argument appears to be supported by the record; but we have concluded to pass the consideration of this ques-. tion also, and to rest our determination upon the limitation bar pleaded as a defense in a separate paragraph of the answer.

It should be borne in mind that this action is not one brought under any of the subsections of section 518 of our Civil Code of Practice; but, if it were otherwise, then the provisions of sections 2515 and 2519, supra, would apply, as was held by us in the case of Jeffers v. Taylor, 178 Ky. 392, 198 S. W. 1160. So that, if under the facts

of this case it could possibly be said that the action was founded upon either subsections 4 or 7 of section 518 of the Civil Code, then the time within which the action should be brought is that provided by section 2515 as modified by section 2519.

It is well settled by the judicial determinations of this court that, to sustain an action for relief against alleged fraud or mistake, brought after the expiration of five years from the commission thereof and within ten years from that time, so as to be within the provisions of section 2519, the petition must allege, and the proof must show, that plaintiff ''did not and could not, by reasonable diligence, discover the fraud or mistake until within five years before the commencement of the action.'' Woods v. James, 87 Ky. 511, 9 S. W. 513, 10 Ky. Law Rep. 531; Brown v. Brown, 91 Ky. 639, 11 S. W. 4, 12 Ky. Law Rep. 280; Fritschler v. Koehler, 83 Ky. 78, 7 Ky. Law Rep. 34; Cavanaugh v. Britt, 90 Ky. 275, 13 S. W. 922, 12 Ky. Law Rep. 204. In other words, the rule as adopted by this court is that, when such action is brought after the lapse of five years from the time of the commission of the mistake or the perpetration of the fraud, the plaintiff must allege facts which would entitle him to the extended period of limitation within which to bring his action as given in section 2519 of the statute. Plaintiffs in this case in general terms did allege that they could not discover the alleged mistake against which they seek relief by the exercise of ordinary care, which allegation was denied in the answer, and to sustain that allegation they proved that counsel for both themselves and defendant in the division suit, in drawing the judgment and other orders in that case and in drawing the commissioner's deed in conformity therewith, ''assumed'' that defendant was the owner of a half undivided interest in the oil and gas in and under the controverted tract of land, when in truth and in fact that assumption was a mistake; and plaintiff's entire case rests upon such erroneous assumption by themselves and counsel.

It would seem that it would require no argument to demonstrate that the accepting and acting upon such assumption would not constitute ''reasonable diligence'' to discover the facts so as to entitle the litigant relying alone upon the assumption to the extended period of limitation given by section 2519 of our Statutes. The very

subject-matter involved in the division suit was the title of the respective litigants to the property which was sought to be divided in that case. That title was of record and the slightest diligence would have revealed the truth concerning it, and the law is well settled and without conflict to the effect that—

> "Where the facts constituting or showing the fraud appear from the public records required by law to be kept and open to his (the defrauded party) inspection, his ignorance of the fraud will not postpone the operation of the statute, and that limitations will run from the time the record was made. Record of a deed is within the rule just stated where the facts constituting the fraud appear on the face of the recorded deed." 37 C. J. 943, sec. 310.

On page 950, sec. 322, same volume, the text points out that the same principle governs where the cause of action is based upon mistake. as it does where relief against fraud is sought; the text saying:

> "The principal which governs the running of the statute of limitations in cases where equitable relief is sought on the ground of mistake is substantially the same as that applicable in cases of fraud hereinbefore discussed."

And in support of that statement the case of Blakely v. Hanberry, 137 Ky. 283, 125 S. W. 703, is cited in the note. We have read the opinion in that case and find that it was correctly cited. To the same effect is the text in 17 R. C. L. sec. 219.

In conformity with the text of the two publications referred to is the opinion of this court in the case of Denny v. Wickliffe, 1 Metc. 216. The question involved in that case was whether the party seeking the relief was chargeable with notice of facts contained in the recorded deeds so as to start limitations against his adopted remedy for relief. In holding that he was so chargeable the opinion said:

> "The deeds by which the defect in the title is manifested were of record in the county where Wickliffe resided, and were accessible to all persons. By ordinary diligence he could have discovered, at any time during the pendency of the suit, all the matters which he now relies upon. As a purchaser, the

law regards him as constructively notified of any defect in his vendor's title that appears of record. Besides, it is against the settled policy of the law to permit a party to a suit to be careless and negligent, until the suit has been tried and decided, and then to awaken up and bring forward matters which might, by ordinary diligence, have been produced and relied on upon the trial. In this case there was no concealment or misrepresentation by the adverse party, nothing to delude or deceive the purchaser. The only reason assigned by him for failing to investigate the title was, that he entertained a confident belief that the whole of the purchase money was paid, and if so, he was wholly indifferent, as may be inferred from his statement, as to the condition of the title. That, however, does not constitute a legal excuse for the want of diligence in looking into the title, nor a sufficient reason for not having brought the title into question in the original suit.''

To the same effect are the cases of Howton v. Roberts, 49 S. W. 340, 20 Ky. Law Rep. 1331, and Meade v. Elkhorn Fuel Co., 194 Ky. 86, 238 S. W. 201, in which latter opinion the two prior ones just referred to are cited in support thereof. Upon the point under consideration we said in the Meade opinion:

"If a new trial could be obtained upon the showing made here, then a litigant could try separately the validity of many if not all of the links in a chain of title by simply assuming without looking at the public records that apparently regular, but in fact spurious copies thereof, introduced by his adversary to prove his title, were valid. To so hold would require of the parties much less than reasonable diligence and render a trial of title a farce.''

We are not here concerned with the question as to what effect the recording of a voluntary deed through and by which the vendor seeks to defraud his creditors may have upon the limitation of the time within which his creditor may seek to set it aside on the ground of such fraud, since there appears to be some apparent conflict in our opinions on that question. One class of cases represented by Ward v. Thomas, 81 Ky. 452, seem to hold that the discovery of the fraud by the creditor in such cases is to be reckoned, not from the record of the fraudulent deed, but from actual notice to him of the fraud;

while in the case of Cogar v. National Bank of Lancaster, 151 Ky. 470, 152 S. W. 278, the opinion holds that an action to subject to the payment of a debt land conveyed to the wife of the debtor for the purpose of defrauding his creditor was barred within five years, since the recording of the deed was notice to creditors that the wife held the title. We do not have that question here, and are therefore not called upon to reconcile any conflict that might exist in our decisions with reference to the proper limitations for the bringing of that character of action. Neither is this case governed by our opinion in the case of Hoge v. Ky. River Coal Corporation, 216 Ky. 51, 287 S. W. 226, since in that case the question we have here was not involved. The relief there sought was to have the agent of a corporation declared the trustee of his principal with reference to the title to a tract of land which the agent fraudulently procured to be conveyed to himself, although the consideration was paid by the principal. That case is governed by an entirely different principle from the one announced in the Meade and other cases and which latter must govern the determination of this case.

Following the first above referred to cases, it is manifest that the parties to, as well as the attorneys in, the division suit, supra, are chargeable with notice, not only of the title of defendant to the minerals under the involved tract of land, but also with notice of the fact that the division deed executed to it conveyed the oil and gas under the surface acreage that it received in the division. Being charged with those facts at the time, the right to maintain this action became and was barred within five years thereafter, and plaintiffs cannot take refuge under the provisions of section 2519 of the statute on the ground that they did not actually discover the alleged mistake until within two years before they filed the action.

It follows, therefore, that the court erred in the judgment it rendered. Of course, this opinion will in no wise affect the title, if any, that the Harkins heirs may own in the oil and gas under the divided tract; but the judgment rendered in the division suit, and the deeds executed pursuant thereto, are binding on plaintiffs and defendant in this action.

For the reasons stated, the judgment is reversed, with directions to dismiss the petition.