**Don SHELTON and Kay Stratton Shelton, Appellants,**

v.

**Eugene CLIFTON, Jr., Sandra Clifton; and Eugene Clifton, Sr., Appellees.**

**No. 86–CA–1912–MR.**

Court of Appeals of Kentucky.

Feb. 26, 1988.

Clyde L. Stapleton, Lexington, for appellants.

Walter C. Cox, Lexington, for appellees.

Before COMBS, COOPER, and WILHOIT, JJ.

COOPER, Judge.

This is an appeal from a judgment of the trial court ordering the co-appellant, Kay Stratton Shelton, defendant below, to reconvey to her husband, the appellant, Don Shelton, his one-half interest in the marital residence. The basis for the judgment was that the original conveyance was fraudu-lent. On appeal, the principal issue is whether the trial court erred, as a matter of law, in ruling that the appellees' claim, that the conveyance in question was fraud-ulent, was not barred by the applicable statute of limitations. KRS 413.120. Re-viewing the record below, we reverse.

The facts relative to this action are as follows: in March of 1977, one of the appel-lant's employees, Fred Haddix, was in-volved in a motor vehicle accident on U.S. Highway 64 in West Memphis, Arkansas. The accident occurred when Haddix failed to obey a stop sign at an intersection and drove a Peterbilt truck and trailer owned by the appellant into a vehicle operated by the co-appellee, Eugene Clifton, Jr. As a result of the accident, the co-appellee re-ceived numerous injuries requiring exten-sive medical treatment.

After being notified of the accident, the appellant went to West Memphis, Arkansas and found that the two drivers of the ve-hicle, Roy Haddix and Fred Haddix, were in jail. He left them in jail, but picked up his truck and returned it to Louisville, Ken-tucky the following day. On March 26, 1979, the appellant conveyed his interest in his marital residence to his wife. This con-veyance effectively left him insolvent. On April 11, 1979, a complaint was filed in circuit court in Crittenden County, Arkan-sas on behalf of the appellees. On April 16, 1979, service of process was completed on the appellant via the Secretary of State of Arkansas. On December 4, 1979, a de-fault judgment was entered against the appellant in the amount of $31,800.

On January 22, 1982, more than three years after the entry of the default judg-ment in the foreign sister state, a com-plaint was filed against the appellant in Fayette Circuit Court to enforce the for-eign judgment. On May 1, 1985, the appel-lees were awarded judgment against the appellant in the amount of $31,800 plus 8% interest accruing from December 4, 1979. Additionally, the judgment stated that an interest rate of 12% should run from May 1, 1985, until the judgment was paid. At-tempts were subsequently made to execute upon such judgment and to garnishee

funds from the appellant. Apparently, it was only after the entry of the judgment in May of 1985 that the appellees learned that the appellant had transferred his share of the marital property to his wife. As a result, the appellees filed separate motions to include the co-appellant as a party defendant and to set aside the conveyance made by the appellant to his wife in March of 1979. The trial court subsequently sustained the motion to permit an amended complaint to be filed naming the co-appellant as a party defendant and issued a judgment ruling that the conveyance in question was fraudulent and that a deed must be executed returning the property to the position it was in prior to the transfer of March 26, 1979. It is from such judgment that the appellants now appeal.

In an order entered January 31, 1986, the trial court ruled that the statute of limitations did not bar the appellees' claim. Specifically, it ruled, in part, as follows:

There are two statues (sic) relevant to the limitations issue. KRS 413.120(12) says, "The following actions shall be commenced within five (5) years after the cause of action accrued: ... (12) an action for relief or damages on the ground of fraud or mistake." KRS 413.130(3) reads as follows: "In an action for relief or damages for fraud or for mistake, referred to subsection (12) of KRS 413.-120, the cause of action shall not be deemed to have accrued *until the discovery....* However, the action shall be commenced within ten (10) years after the ... perpetration of the fraud." (emphasis added.)

The courts, in interpreting this statute, have said, "In order to enlarge the five-year statute of limitations to ten years, on a charge of fraud, the appellant must allege and prove the fraud was not discovered within the five-year period and also allege and prove that fraud could not have been discovered within that period by the exercise of reasonable diligence." (citation omitted.) *If there were no earlier actual knowledge, the limitation commences to run when by the exercise of ordinary care, the fraud ought to have been discovered.* (citation

omitted.) *Madison County v. Arnett,* 360 S.W.2d 208, 210 (Ky.1962). (emphasis added.)

The plaintiffs contend that because there was a confidential relationship [between husband and wife] that actual notice of the fraud was required. The courts have been willing to interpret this rule expansively when the "discovery" of fraud involved a fraud between persons in a confidential relationship. "When a confidential relationship exists *between the parties* ... the statute does not begin to run until *actual* discovery of the fraud or mistake. Constructive notice such as the recordation of the instrument containing the mistake is not sufficient to commence the operation of the statute." *Hernandez v. Daniel,* 471 S.W.2d 25, 26 (Ky.1971). The explanation for the actual notice is that, "[p]ersons in a confidential relationship do not have the reasons or occasions to check upon (sic) each other that would exist if they were dealing at arms length." *McMurray v. McMurray,* 410 S.W.2d 139, 142 (Ky. 1966). In the case at bar, however, the plaintiff and defendant had no confidential relationship with each other; therefore, the special exception is inapplicable.

Defendants argue that the time check on the statute of limitations started against the plaintiffs on the date the deed was recorded in Fayette County. On that date, however, the plaintiffs had no judgment which they could sue upon in the Commonwealth of Kentucky. The earliest date they had a potential cause of action in this Commonwealth was December, 1979 when they were awarded a default judgment in Arkansas. Kentucky has not ruled directly on this issue; however, a Florida appeals court has stated well the general policy: "It is well settled that a creditor holding a foreign judgment cannot execute upon real property within the situs state until he had (sic) reduced the foreign judgment to a judgment of the (sic) state." (citation omitted.) *National Equipment Rental Ltd. v. Collidge (sic) Bank & Trust Company,* 348 So.2d 1236 (Fla.App.

1977); 46 Am Jr.2d, Judgments, Section 905.

The plaintiffs have cited the case of *Smith v. Smith* in support of their position. [231 Ky. 229] 21 S.W.2d 246 (Ky. 1929). In the *Smith* case, a creditor sued a father who jointly owned property with his son. The creditor was awarded a judgment, the sum of which entirely consumed the value of the property. The son sued to recover his share. In discussing the five-year statute of limitation, the court said, "The cause of action ... did not accrue when the deed was executed.... A cause of action accrues when the right to institute and maintain a suit exists...." *Id.* [21 S.W.2d] at page 311. If this reasoning is followed, the plaintiffs' cause of action, for fraudulent transfer did not ripen until the foreign judgment was reduced to a Kentucky judgment in May, 1985. This being the case, this action is well within the five-year limitation period.

Even if the foregoing authorities were not applicable, this cause of action would be saved under the "discovery" provisions of the statute. Unless the plaintiffs were required to search for assets prior to the institution of the action in Arkansas, they had no reason to exercise "due diligence" to discover the transfer until they filed suit in Kentucky in January 1982, again, well within the time limit.

Notwithstanding the trial court's logic, the appellants argue that the statute of limitations began to run as of December 4, 1979, the time when the foreign judgment *could* have been enforced in the Commonwealth of Kentucky. Specifically, they cite the provisions of CR 18.02. That rule states as follows:

> Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money.

Although the appellants' argument with respect to CR 18.02 is both logical and persuasive, we find that simply on the basis of existing case law, the trial court's ruling was in error.

The limitation period set forth in KRS 413.120 and KRS 413.130(3) is a codification of long-standing legislative enactments. Although the present language of KRS 413.130(3) qualifies the limitation period set forth in KRS 413.120 by creating an exception for the strict limitation period of five years, the general rule in this jurisdiction has been that the limitation period runs from the date the fraud was perpetrated. *See* Annot., 100 A.L.R.2d 1094 (1965).

In *Elkhorn Coal Corporation v. Hite*, 225 Ky. 735, 9 S.W.2d 1083 (1928), the court, in construing the language of Kentucky Statute Section 2519, which codified a five-year limitation period for seeking action for relief against fraud or mistake, held that in an action to set aside a deed as being fraudulent, constructive notice that the fraud had occurred is furnished at the time the deed is recorded. As such, the five-year limitation period begins to run from the date the deed is recorded. Nevertheless, the court, in echoing the future language of KRS 413.130(3), held that if the party seeking to set aside the conveyance establishes that he *could not* have discovered the fraud by the exercise of reasonable diligence, the five-year period is extended to ten years. Specifically, the court held as follows:

> In other words, the rule as adopted by this court is that, when such action is brought after the lapse of five years from the time of the commission of the mistake or the perpetration of the fraud, the plaintiff must allege facts which would entitle him to the extended period of limitation within which to bring his action as given in section 2519 of the statute.

*Id.* at 740, 9 S.W.2d 1083.

In its ruling, the *Hite* court acknowledged the conflict in its previous decisions:

one line of decisions held that the limitation period begins to run at the time the deed is recorded and a second line of decisions held that the limitation period only begins to run at the time the fraud is discovered. Although it did not specifically overrule its prior line of cases, the court held that in the specific situation before it the creditors involved were on notice that the fraud had been committed by virtue of the deed being recorded. As such, the court concluded that the plaintiffs could not "take refuge under the provisions of section 2519 of the statute on the ground that they did not actually discover the alleged mistake until within two years before they filed the action." *Id.* at 743, 9 S.W.2d 1083.

Of similar import is the decision of the court in *Pierce v. J.B. Pierce's Trustee in Bankruptcy*, 238 Ky. 495, 38 S.W.2d 254 (1931). There the court, in dealing with a situation involving a husband who attempted to defraud his creditors by transferring his assets to his wife and, in fact, improving her property, ruled that the creditors had constructive notice of the fraud by the recording of the deed and actual notice of the fraud by the visible improvements made to the wife's property. Consequently, it held that if an action to set aside the deed as fraudulent is commenced more than five years after the cause of action accrues—that is after the deed is recorded —then such an action will fail absent "facts showing that the fraud was not discovered within five years, and, by reasonable diligence, could not have been discovered within that period." *Id.* at 505, 38 S.W.2d 254. Stated differently, the court said that any delay in filing such action within the limitation period must be shown to be excusable or the action will fail. *Cf. Leitchfield Milling Company v. Rogers*, 239 Ky. 481, 39 S.W.2d 961 (1931); *Gillardi v. Henry*, 272 Ky. 188, 113 S.W.2d 1158 (1938).

Similarly, in *Hollifield v. Blackburn*, 294 Ky. 74, 170 S.W.2d 910 (1943), the court, in construing the language of both KRS 413.-120 and KRS 413.130 (K.S. §§ 2515, 2519), held that the limitation period begins to run once the cause of action accrues and that absent evidence that the fraud could not have been discovered within the five-year

period by the exercise of ordinary diligence, the cause of action accrues at the time the deed is recorded. The *Hollifield* court seemed to clarify the contradiction between the language contained in the two statutes:

KRS 413.120 provides that an action for relief from fraud or mistake must be commenced within five years after the cause of action accrued. KRS 413.130 provides that the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake, but that the action "shall be commenced within ten years after the time of making the contract or the perpetration of the fraud." Since we have construed the latter statute to mean that the cause of action accrues when the fraud or mistake becomes discoverable by the exercise of ordinary diligence, and held that the recording of a deed disclosing the fraudulent transaction is notice thereof to all the world, appellants' cause of action accrued on January 23, 1928, the date the deed was recorded. Had the deed not been recorded or the alleged fraud become otherwise discoverable, nevertheless the appellants in order to maintain their action would have had to commence it within ten years after November 25, 1925, the date on which the deed was executed.

*Id.* at 76, 170 S.W.2d 910.

Such language was followed by the court in *Martin v. Wagers*, 310 Ky. 363, 220 S.W.2d 580 (1949). There the court, in confronting a situation in which a grantor sought to reform a deed after the five year period, held that the party seeking such reformation must establish that it "did not and could not have discovered it by the exercise of reasonable diligence." *Id.* at 366, 220 S.W.2d 580. In effect, the court held that the onus is on such a party to prove that it exercised reasonable diligence and still did not discover the fraud involved.

Although the appellees cite the decision of the court in *Smith v. Smith*, 231 Ky. 229, 21 S.W.2d 246 (1929), as precedent for its argument that a cause of action for

setting aside a fraudulent conveyance does not necessarily accrue when the deed is recorded, we find *Smith* to be distinguishable. In *Smith*, a son filed an action against his father's estate to recover an indebtedness owed to him as a result of the sale of a tract of land owned jointly by himself and his father. That land was sold to a land company and the son sought to recover his portion of the proceeds. As a result of action on the part of the father, the land company kept a portion of the proceeds from the entire tract to pay for a debt owed to it by the father. Consequently, the son attempted to recover the money owed to him by his father.

In the action subsequently filed by the son, the administrator of his father's estate pleaded the five-year limitation period. Yet the court ruled that when the deed in question—conveying the interest of both the father and son to the land company— was recorded, no fraud was perpetrated; rather the fraud occurred when a judgment was rendered applying the money of the son to the debt of the father. As such, it held that the cause of action did not accrue against the father until the son's money "was taken and applied in payment of his father's debt." *Id.* at 231, 21 S.W.2d 246. Therefore, the language of the court's decision, stating that "a cause of action accrues when the right to institute and maintain a suit exists," *id.* at 231, 21 S.W.2d 246, is not to be taken out of context.

Here, the appellees argue that their cause of action against the appellant did not accrue until a separate judgment was entered in the Commonwealth of Kentucky. Such argument echoes the language of the trial court, itself an echo of the court's language in *Smith, supra,* that the cause of action to set aside the appellant's conveyance to his wife did not ripen until the foreign judgment was reduced to a Kentucky judgment in May of 1985. Yet again, the language of the court in *Smith* is not to be taken out of context. We find that *Smith* is not in conflict with prior decisions of the appellate courts which have ruled that a cause of action to set aside a fraudulent conveyance accrues at the time the fraud was executed or perpe-

trated. In *Smith, supra,* the fraud by the father against the son was perpetrated at the time the judgment was entered in favor of the land company. There, the question of the deed was not an issue.

Although the trial court, in its judgment, ruled by implication that the earliest possible date the appellees had a cause of action was December of 1979, when the default judgment was entered in the state of Arkansas, it nevertheless ruled that in that a foreign judgment was involved, the cause of action did not ripen until that foreign judgment had been reduced to judgment in this state. As authority for its ruling, the court cited the decision of the Florida appellate court in *National Equipment Rental Ltd. v. Coolidge Bank & Trust Company,* 348 So.2d 1236 (Fla.App.1977). Yet, that decision merely stands for the proposition that a creditor holding a foreign judgment can only *execute* upon real property within the situs state after he has reduced such foreign judgment to judgment in the situs state. It does *not* deal with the question of the statute of limitations for setting aside a fraudulent conveyance.

Here, the appellees acted within the statute of limitations for reducing a foreign judgment to a judgment in this jurisdiction. By reducing the Arkansas judgment to a judgment in this Commonwealth, they were able to execute upon it. Yet, a different issue exists as to whether they acted too late to set aside a fraudulent conveyance made in 1979.

At the time the default judgment was entered in December of 1979, the appellees should have been put on notice that if they were to execute on that judgment they had to determine the nature and location of the appellant's assets and whether any of his assets had been transferred to a third party. In any event, they had *five* years from the time the deed was recorded to set aside the fraudulent conveyance. Although the appellees argue that they acted within the limitation period for reducing the foreign judgment to a judgment in this state, the issue is whether they exercised all reasonable and ordinary diligence in discovering

the fraud once the deed was recorded. This is especially true in light of the language of CR 18.02 which gives a party a remedy even before a judgment is entered.

On the basis of the record below, it is evident to this Court that the appellees failed, as a matter of law, to exercise all reasonable and ordinary diligence in discovering the alleged fraud perpetrated by the appellant in conveying his interest in the marital residence to his wife. At the time the appellees filed a complaint against the appellant in January of 1982, seeking to reduce the foreign judgment to a judgment in this jurisdiction, they could have easily checked the records in the County Clerk's office in Fayette County to determine the appellant's assets. Had they done so, they would have discovered the conveyance of March 29, 1979.

The judgment of the trial court is reversed.

All concur.